IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-04027-MDH |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN HUGO EICKHOFF, JR., | ) | |
| RHONDA KAYE EICKHOFF, | ) | |
| HOFFMAN ASSOCIATES, LLC, | ) | |
| ARIC ELLIOT SCHREINER, | ) | |
| COLUMBIA CPA GROUP LLC, | ) | |
| JOHN WILLIAM GRAY II, and | ) | |
| DAMON THOMAS EISMA, individually | ) | |
| and d/b/a DAMON T. EISMA | ) | |
| ATTORNEY AT LAW, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**AMENDED COMPLAINT**

The United States, for its amended complaint against John Hugo Eickhoff, Jr., Rhonda

Kaye Eickhoff, Hoffman Associates, LLC, Aric Elliot Schreiner, Columbia CPA Group LLC,

John Williams Gray II, and Damon Thomas Eisma (individually and doing business as Damon T.

Eisma Attorney at Law) (collectively, "Defendants"), alleges the following:

1.      Defendants organize, promote, or facilitate (or assist in the organization,

promotion, or facilitation of) an abusive tax scheme which they claim among other things,

eliminates (or "legally forgive[s]"—as they say in their advertising) the federal capital gains tax

on income derived through the sale or other disposition of property. Specifically, Defendants

falsely claim that customers who participate in their scheme can sell property through a

charitable remainder annuity trust ("CRAT") arrangement and thereby eliminate the taxable

income that customers would (and should) otherwise lawfully realize.

Case 2:22-cv-04027-MDH   Document 4   Filed 03/09/22   Page 1 of 48

2. As of February 2022, dozens of customers have used or are using at least 70 known CRATs organized under Defendants' abusive tax scheme (hereinafter referred to as the "Hoffman CRAT Scheme"). The IRS conducted 19 audits and concluded that the Hoffman CRAT Scheme resulted in an underreporting of more than $17,000,000 in taxable income, or $900,000 in taxable income for each of the customers participating in the audited CRATs.

3. The United States seeks a permanent injunction, under 26 U.S.C. §§ 7402 and 7408, barring Defendants, individually or doing business through any entity, from promoting the Hoffman CRAT Scheme or any other tax avoidance scheme, strategy, plan, or arrangement that claims to eliminate a taxpayer's federal income tax obligations by reason of participation in the scheme, strategy, plan, or arrangement.

4. The United States seeks a permanent injunction, under 26 U.S.C. §§ 7402 and 7407, barring Defendants Aric Elliott Schreiner, Columbia Group, LLC, and Damon T. Eisma, individually or doing business through any entity, from acting as a federal tax return preparer and from owning, operating, managing, controlling, licensing, franchising, working for, or volunteering at a tax return preparation business.

5. The United States also seeks to disgorge, under 26 U.S.C. § 7402, the ill-gotten gains that Defendants derived from this bogus scheme.

**Authorization**

6. This action is commenced at the request and with the authorization of a delegate of the Secretary of the Treasury, and at the direction of a delegate of the Attorney General of the United States under 26 U.S.C. § 7401.

## Jurisdiction and Venue

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, as well as 26 U.S.C. §§ 7402(a), 7407, and 7408.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 7407(a), and 7408(a) because Defendants John Eickhoff, Rhonda Eickhoff, Hoffman Associates, LLC, Aric Schreiner, and Columbia CPA Group, LLC engaged in the penalty conduct at issue within this judicial district. Moreover, a substantial part of the events giving rise to the claims herein occurred within this judicial district.

## The Parties

9.     Defendant John Hugo Eickhoff, Jr. ("John Eickhoff") is a "certified senior advisor" with Hoffman Associates, LLC.  He is also an insurance agent who is licensed in Iowa, Florida, and Missouri. John Eickhoff founded and is the main promoter of the Hoffman CRAT Scheme (i.e., the abusive tax scheme at issue). He promotes the Hoffman CRAT Scheme to the public through Hoffman Associates, LLC. John Eickhoff conducts business in connection with the promotion of the Hoffman CRAT Scheme in at least Iowa, Illinois, and Missouri.  John Eickhoff has no formal education or training in taxation, estate planning, accounting, or trusts. John Eickhoff is married to Rhonda Kaye Eickhoff, and he resides within Scott County, Iowa.

10.     Defendant Rhonda Kaye Eickhoff ("Rhonda Eickhoff") is the owner and managing-member of Defendant Hoffman Associates, LLC. She manages the day-to-day operations of the business and is licensed to sell insurance products in more than twenty states. Rhonda Eickhoff promotes the Hoffman CRAT Scheme to the public through Hoffman Associates, LLC, and she is the producer on the insurance products sold to participants in the Hoffman CRAT Scheme. Rhonda Eickhoff has no formal education or training in taxation, estate

Case 2:22-cv-04027-MDH   Document 4   Filed 03/09/22   Page 3 of 48

planning, accounting, or trusts. Rhonda Eickhoff is married to John Eickhoff, and she resides in Boone County, Missouri.

11.     Defendant Hoffman Associates, LLC ("Hoffman Associates") is a limited liability company organized under the laws of the State of Missouri, with an office in Boone County, Missouri. Hoffman Associates is wholly owned by Rhonda Eickhoff. Through its website— www.hoffman-assoc.com—the company advertises "elegant tax solutions made simple" and represents that it can "[e]liminate capital gain [and] eliminate estate tax without life insurance." Hoffman Associates promotes the Hoffman CRAT Scheme to the public.

12.     Defendant Aric Elliot Schreiner ("Aric Schreiner") is a tax return preparer, and a Missouri-licensed certified public accountant. He holds himself out to be a "Senior Tax Reduction Strategist." Schreiner promotes the Hoffman CRAT Scheme to the public. Schreiner also prepares federal tax returns for customers participating in the Hoffman CRAT Scheme. He resides in Boone County, Missouri.

13.     Defendant Columbia CPA Group LLC ("Columbia Group") is a limited liability company organized under the laws of the State of Missouri. Columbia Group is wholly owned by Schreiner and provides a variety of financial-related services, including tax preparation, tax planning, tax coaching, life insurance, fixed annuities, and litigation support. Columbia Group is a tax return preparer, and it prepares federal tax returns for customers participating in the Hoffman CRAT Scheme. Columbia Group also promotes the Hoffman CRAT Scheme. It has an office located in Boone County, Missouri.

14.     Defendant John Gray II ("John Gray") is an attorney who is licensed to practice law in Alabama. Gray organizes or assists with the organization of the CRATs for customers participating in the Hoffman CRAT Scheme. He serves as trustee for several of the CRATs. John

Gray promotes the Hoffman CRAT Scheme and does business with Hoffman Associates in connection with the Hoffman CRAT Scheme. John Gray resides in Jefferson County, Alabama.

15. Defendant Damon Thomas Eisma, individually and doing business as Damon T. Eisma Attorney at Law ("Damon Eisma"), is a federal tax return preparer. He is also an attorney who is licensed to practice law in Minnesota. Damon Eisma prepares federal tax returns for customers participating in the Hoffman CRAT Scheme. Damon Eisma promotes the Hoffman CRAT Scheme and does business with Hoffman Associates in connection with the Hoffman CRAT Scheme. Damon Eisma resides in Rock County, Minnesota.

### Background

16. The Internal Revenue Code imposes an income tax on the annual taxable income of a trust. 26 U.S.C. § 1(e). A trust's taxable income includes "income accumulated in trust . . .," "income which is to be distributed currently by the fiduciary to the beneficiaries . . ." and "income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated." 26 U.S.C. § 641(a).

17. Every trust with $600 or more of gross income in any taxable year must file an income tax return. 26 U.S.C. § 6012(a)(4). Estates and trusts (other than grantor trusts) file their income taxes on a Form 1041 (U.S. Income Tax Return for Trusts & Estates).

18. A "CRAT" is a type of trust that pays a sum certain, at least annually, to one or more recipients (beneficiaries) for a term of years—between two and twenty. 26 U.S.C. § 664(d)(1)(A). After the term ends, any remaining corpus and accumulated, undistributed income or gains must be transferred to, or for the use of, one or more designated charities. See 26 U.S.C. § 664(d)(1)(C).

19.     A CRAT is exempt from federal income tax under 26 U.S.C. § 664(c)(1) so long as it satisfies each of the requirements set forth in 26 U.S.C. § 664(d)(1) when the CRAT is established.

20.     A CRAT must annually file with the IRS a Form 5227 (Split-Interest Trust Information Return) to report, among other things: (i) the trust's accounting of financial activities of the CRAT during the year, and (ii) distributions to non-charitable beneficiaries.

21.     A CRAT must issue a Schedule K-1 to each of its beneficiaries. The Schedule K-1 reports the respective beneficiary's share of current distributions from the distribution tiers under 26 U.S.C. § 664(b).

22.     A CRAT must characterize distributions made to its beneficiaries in accordance with the rules set forth in 26 U.S.C. § 664(b).

23.     Distributions from a CRAT are taxable to beneficiaries to the extent the distributions can be properly characterized as current and accumulated ordinary income, capital gains, and other income. The distributed income must be included as part of the beneficiaries' gross income on their federal income tax returns. Beneficiaries are required to characterize the distributions received from a CRAT in accordance with the rules set forth in 26 U.S.C. § 664(b).

### Defendants' Abusive Tax Scheme

24.     The Hoffman CRAT Scheme is an abusive tax avoidance scheme that purports to, among other things, eliminate the federal capital gains tax on income realized by customers in connection with the sale or other disposition of property made under the scheme. Participation in the Hoffman CRAT Scheme results in the unlawful exclusion of taxable income, substantial underreporting of taxable income, and significant understatement of tax liability on each customer's federal income tax returns.

25.     Defendants promote the Hoffman CRAT Scheme to the public through a variety of channels, including advertisements in newspapers, online media, and the Hoffman Associates website (www.hoffman-assoc.com). For example, in 2016 and 2021, Defendants drafted or assisted in the drafting of advertisements that were published in the Classified Section of the *High Plains/Midwest AG Journal* (*i.e.*, a farming magazine). True and correct copies of the advertisements referred to in the previous sentence are reproduced below:

**Inset A**
Ad Published September 2016



**HOFFMAN ASSOCIATES**
7121 E MT HOPE RD
COLUMBIA, MO
573-474-7265
jreickhoff@earthlink.net

Capital Gains Taxes Forgiven
CAPITAL GAINS tax legally forgiven on the Sale of Real Estate, Stocks, C-Corps, S-Corps, Livestock, Family Businesses, and even if selling to family members, without having to do a 1031 exchange. We have the capability of converting taxable income to Tax-Free, Lifetime income.
Inheritance Taxes Eliminated
Maintain 100% control of your current assets. Magnify the value of your estate for your heirs, Tax-Free.
Hoffman Associates
PH-866-500-8600

**Inset B**
Ad Published March & November 2021



**Capital Gains Taxes Eliminated**
CAPITAL GAINS tax legally eliminated on the Sale of Real Estate, Stocks, C-Corps, S-Corps, Livestock, Family Businesses and even if selling to family members, without having to do a 1031 exchange. We have the capability of converting taxable income to Tax-Free, Lifetime income.
**Inheritance Taxes Eliminated**
Maintain 100% control of your current assets. Magnify the value of your estate for your heirs, Tax-Free.
**Hoffman Associates**
**PH-754-755-1212**

26.     John Eickhoff organizes or assists in the organization of a CRAT for the individuals (*i.e.*, customers) he recruits to participate in the Hoffman CRAT Scheme.

27.     John Eickhoff refers recruited customers to John Gray and other business associates who draft or assist with the drafting of CRAT instruments under the Hoffman CRAT Scheme. Some of the business associates, including John Gray, also serve as trustees of the CRATs.

28.     The CRAT instruments name the scheme customers (i.e., the grantors) as the beneficiaries of the CRATs and provide for the payment of an annual annuity to the customer-beneficiaries.

29.     The CRAT trustee instructs the customer-grantors to transfer property—usually appreciated real property—to their respective CRAT when the CRAT is organized or shortly thereafter.

30.     The CRAT trustee sells the property held by the CRATs typically within two-to-three months after organizing the CRAT. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma claim that selling the property under the Hoffman CRAT Scheme eliminates the capital gains or other income that would ordinarily be realized by a scheme customer.

31.      Shortly after the sale, the CRAT trustee distributes a portion of the proceeds—usually around ten percent—to one or more charitable organizations designated either in the CRAT instrument or by the customer-grantor. This portion of the proceeds is also known as the "charitable remainder interest."

32.     With the assistance of Rhonda Eickhoff, the CRAT trustee uses the other portion of the sale proceeds to purchase a single-payment insurance annuity ("SPIA") contract from a

third-party insurance company. Rhonda Eickhoff sells the SPIAs to the customers participating in the Hoffman CRAT Scheme.

33.     Each SPIA contract requires the third-party insurance company to make an annual annuity payment to the named scheme customer-beneficiaries of the CRATs. The third-party insurance company issues the required SPIA payments directly to the CRAT customer-beneficiaries (who are the customer-grantors of the CRAT) and separately issues a Form 1099-R (Distributions from Pensions, Annuities, etc.) to the CRAT.

34.     All CRATs must file a Form 5227 (Split-Interest Trust Information Return) annually with the IRS to report, among other things: (i) the trust's accounting of financial activities of the CRAT during the year, and (ii) distributions to non-charitable beneficiaries. Defendants Aric Schreiner and Damon Eisma prepare and file the Forms 5227 on behalf of the CRATS associated with the Hoffman CRAT Scheme, but they fail to report the income received from the sale of CRAT property as part of the CRAT's gross income on the Forms 5227. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that the CRATs are not required to report the sale proceeds as income because the CRATs are tax-exempt entities under the Hoffman CRAT Scheme. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their statements were false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

35.     In addition to the Form 5227, a trust that fails to qualify as a CRAT under section 664(c) and (d) with $600 or more of gross income in any taxable year must file a Form 1041 (U.S. Income Tax Return for Trusts & Estates), or for a trust that is deemed a grantor trust, report gross income on the grantor's Form 1040 (U.S. Individual Income Tax Return). At the direction

of Defendants Aric Schreiner and Damon Eisma, the unqualified CRATS associated with the Hoffman CRAT Scheme do not report gross income on Forms 1041 or Forms 1040 despite being required to do so. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that the CRATs that they promote and establish for their customers are not required to report gross income on Forms 1041 or Forms 1040 because the CRATs are purportedly tax-exempt entities under the Hoffman CRAT Scheme. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

36.     Distributions from a CRAT are taxable to beneficiaries and must be included as part of the beneficiaries' gross income on their federal tax returns. At the direction of Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma, the customers (beneficiaries) participating in the Hoffman CRAT Scheme do not report the ordinary income and capital gain distributions they each receive under the SPIA contracts as part of their gross income on their federal income tax returns. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that only the interest income distributed to the CRAT beneficiaries under the SPIA contracts must be included as part of the customers' gross income. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

37.     A CRAT must characterize all distributions, direct or indirect, made to its beneficiaries in accordance with the rules set forth in 26 U.S.C. § 664(b). At the direction of Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma, the CRATs associated

with the Hoffman CRAT Scheme do not characterize the amounts distributed to beneficiaries in accordance with the ordering rules set forth in 26 U.S.C. § 664(b). Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that the CRATs are not required to follow the ordering rules set forth in 26 U.S.C. § 664(b). These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

38.     CRAT beneficiaries must characterize the distributions they receive from a CRAT in accordance with the ordering rules set forth in 26 U.S.C. § 664(b). At the direction of Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma, the customers (beneficiaries) participating in the Hoffman CRAT Scheme do not characterize the annuity distributions they receive under the SPIA contracts in accordance with the ordering rules set forth in 26 U.S.C. § 664(b). Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that the ordering rules set forth in 26 U.S.C. § 664(b) do not apply to the SPIA payments made to the beneficiaries because the payments fall under 26 U.S.C. § 72(b). These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their statements were false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

39.     In short, neither the CRATs nor their customer/beneficiaries report any taxable income from the sale of CRAT property. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that any income that would ordinarily be realized by a customer from the sale of a property is eliminated or significantly reduced by disposing of the property

through a CRAT organized under the Hoffman CRAT Scheme. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

### *Defendants Improperly Overstate the Basis in CRAT Property*

40.     A CRAT must follow the cost basis rules set forth in 26 U.S.C. § 1015 for property transferred to the CRAT.

41.     Under 26 U.S.C. § 1015(b), a CRAT is required to take the grantor's cost basis in property transferred by the grantor to the CRAT.

42.     Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that, under the Hoffman CRAT Scheme, a participant may transfer property to a CRAT at no cost to the trust, which allows the trust to take a stepped-up cost basis in the property—in an amount equal to the property's fair market value at the time the property is transferred to the CRAT. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

43.     In accordance with the Hoffman CRAT Scheme, Defendants Aric Schreiner, Columbia Group, and Damon Eisma improperly and unlawfully increased (or stepped-up) the cost basis in property transferred to the CRATs, in an amount equal to the property's fair market value at the time of the transfer. Defendants report the improper basis on the Forms 5227 (Split-Interest Trust Information Return) and Schedules K-1 they prepare on behalf of the CRATs. This

improper and unlawful conduct resulted and continues to result in a significant underreporting of income and understatement of tax liability on their customers' federal income tax returns.

44.     Defendants made or caused another person to make false statements to prospective customers that falsely claimed the Hoffman CRAT Scheme could eliminate the capital gains or other income a participant would ordinarily realize through the sale or other disposition of property. Defendants knew or had reason to know that these statements were false or fraudulent. In addition, these Defendants were on notice that their statements were false because, among other reasons, the IRS informed them on several different occasions that those statements are contrary to the law.

45.     Defendants Aric Schreiner, Columbia Group, and Damon Eisma prepared and continue to prepare federal income tax returns (Forms 1040) for individuals participating in the Hoffman CRAT Scheme. On each return, and in accordance with the Hoffman CRAT Scheme, Defendants Aric Schreiner, Columbia Group, and Damon Eisma willfully and unlawfully omit distributions of CRAT or SPIA income made to and received by customers participating in the Hoffman CRAT Scheme. This willful and unlawful omission of income results in significant understatements of tax liability on their customers' federal income tax returns.

### *Defendants Improperly Characterize CRAT Distributions*

46.     Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that, under the Hoffman CRAT Scheme, the payments made to the CRAT beneficiaries under the SPIA contracts—except for interest income—are considered trust corpus, and, therefore, not taxable. Defendants further falsely claim that the CRATs are not required to account for any accumulated or current year ordinary income, gains, or other income. These Defendants know or have reason to know that these claims are false or fraudulent. In addition,

these Defendants were on notice that their claims are false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

47. Investing in a SPIA does not change the character of distributions from a CRAT or otherwise allow a CRAT or its beneficiaries to avoid the requirements of 26 U.S.C. § 664(b).

48. A CRAT is not a "charitable organization" under the Internal Revenue Code. A CRAT cannot properly and lawfully characterize property transferred to the CRAT as a donation made to a qualified charitable organization for purposes of claiming a federal tax benefit. A grantor cannot properly and lawfully characterize the full value of property transferred to the CRAT as a donation made to a qualified charitable organization for purposes of claiming a federal tax benefit. A grantor may be entitled to a charitable donation for property transferred to the CRAT but only to the extent of the present value of the remainder interest designated for a charitable organization.

49. Defendants John Eickhoff, Aric Schreiner, John Gray, and Damon Eisma falsely claim that that CRATs are charitable organizations under the Internal Revenue Code. These Defendants know or have reason to know that these claims are false or fraudulent. In addition, these Defendants were on notice that their claims were false because, among other reasons, the IRS informed them on several different occasions that these claims are contrary to the law.

### Defendants' False or Fraudulent Statements about the Hoffman CRAT Scheme

50. Defendants made, furnished, or caused another person to make or furnish false statements with respect to the excludability of income, including capital gains, from the sale of CRAT property by reason of a customer's participation in the Hoffman CRAT Scheme. Specifically, Defendants informed customers or their representatives that the Hoffman CRAT Scheme would: (a) eliminate ("legally forgive") the federal tax on a participant's capital gains

that would otherwise be realized through the sale of capital assets; and (b) eliminate the federal tax on a participant's inheritances. Defendants knew or had reason to know that the statements were false or fraudulent. In addition, these Defendants were on notice that their statements were false because, among other reasons, the IRS informed them on several different occasions that these statements are contrary to the law.

51.     Defendants John Eickhoff, Hoffman Associates, Aric Schreiner, Columbia Group, John Gray, and Damon Eisma made, furnished, or caused another person to make or furnish false statements with respect to the securing of tax benefits by reason of a customer's participation in the Hoffman CRAT Scheme. Specifically, these Defendants informed participants or their representatives that participation in the Hoffman CRAT Scheme would result in the following tax benefits: (a) a significant increase in the cost basis of property transferred to and sold through the CRATs; and/or (b) tax-free annuity payments under a SPIA contract purchased by the CRATs. These Defendants knew or had reason to know that their statements were false or fraudulent. In addition, these Defendants were on notice that their statements were false because, among other reasons, the IRS informed them on several different occasions that these statements are contrary to the law.

### Defendant John Eickhoff's Participation in the Abusive Tax Scheme

52.     From 2015 through 2021, Defendant John Eickhoff organized or assisted in the organization of at least 70 CRATs under the Hoffman CRAT Scheme. John Eickhoff continues to organize and assist in the organization of CRATs under the Hoffman CRAT Scheme.

53.     John Eickhoff drafts or assists in the drafting of the advertisements for the Hoffman CRAT Scheme, including the advertisements depicted in paragraph 25 above. The advertisements claim to, among other things, "legally forgive" or eliminate the federal capital

gains tax on the sale or other disposition of property and eliminate inheritance taxes. The advertisements direct individuals to call Hoffman Associates, which has its principal office in Boone County, Missouri. The advertisements were false and misleading.

54. John Eickhoff meets with prospective customers and provides them with promotional materials that explain the purported tax benefits derived from participation in the Hoffman CRAT Scheme.

55. John Eickhoff receives a commission from Hoffman Associates for each customer he recruits to participate in the Hoffman CRAT Scheme.

56. John Eickhoff tells participants, and prospective participants, that they can avoid paying federal income tax on property transferred to and sold through a CRAT organized under the Hoffman CRAT Scheme. John Eickhoff knows or has reason to know that these statements are false or fraudulent. In addition, he was on notice that his statements are false because, among other reasons, the IRS informed John Eickhoff on several different occasions that these statements are contrary to the law.

57. John Eickhoff makes, furnishes, or causes another person to make or furnish gross valuation overstatements under 26 U.S.C. § 6700(b) with respect to the applicable tax basis in the CRAT property sold under the Hoffman CRAT Scheme. Specifically, John Eickhoff tells customers that a CRAT is not required to take the grantor's basis in property transferred to the CRAT, as required under the law. Rather, John Eickhoff tells customers that a CRAT takes a stepped-up basis in transferred property in a manner that eliminates all or most of the gain flowing from the sale of the property. John Eickhoff knows or has reason to know that these statements are false or fraudulent. In addition, he was on notice that his statements are false

because, among other reasons, the IRS informed John Eickhoff on several different occasions that these statements are contrary to the law.

58.     John Eickhoff makes, furnishes, or causes another person to make or furnish false statements that claim the CRATs organized under the Hoffman CRAT Scheme are exempt from federal income tax under 26 U.S.C. § 664(c), and, therefore, are not required to report income received by the CRATs. John Eickhoff knows or has reason to know that these statements are false or fraudulent. In addition, he was on notice that his statements are false because, among other reasons, the IRS informed John Eickhoff on several different occasions that these statements are contrary to the law.

59.     While promoting the Hoffman CRAT Scheme, John Eickhoff knew or had reason to know that his statements on the excludability of federal income tax in connection with the sale of CRAT property were false or fraudulent. John Eickhoff knows or has reason to know that these statements are false or fraudulent. In addition, he was on notice that his statements are false because, among other reasons, the IRS informed John Eickhoff on several different occasions that these statements are contrary to the law.

60.     While promoting the Hoffman CRAT Scheme, John Eickhoff knew or had reason to know that distributions from a CRAT under 26 U.S.C. § 664(b) are taxable to beneficiaries to the extent of current and accumulated ordinary income, capital gains and other income because, among other reasons, the IRS informed John Eickhoff of this on several different occasions, as did other accounting professionals.

61.     John Eickhoff has admitted to the IRS that "thousands" of accountants had informed him that the Hoffman CRAT Scheme was improper or unlawful. Despite this

knowledge, John Eickhoff continued and continues to promote the Hoffman CRAT Scheme to the public.

**Defendant Rhonda Eickhoff's Participation in the Abusive Tax Scheme**

62.     From at least 2015 through 2020, Rhonda Eickhoff promoted the Hoffman CRAT Scheme to the public. Rhonda Eickhoff occasionally traveled with John Eickhoff to promote the Hoffman CRAT Scheme.

63.     Rhonda Eickhoff assists with and approves the design of advertisements used to promote the Hoffman CRAT Scheme to the public. Rhonda Eickhoff arranges for the publication of the Hoffman CRAT Scheme advertisements in various sources, and she causes the advertisement fees to be paid. The advertisements represent that Hoffman Associates can, among other things, "legally forgive" or eliminate the federal capital gains tax on the sale of property, and that it has "the capability of eliminating or reducing inheritance tax."

64.     For example, in 2016, Rhonda Eickhoff designed and approved an advertisement used to promote Hoffman CRAT Scheme. A true and correct copy of that advertisement is set forth below:



65.     Rhonda Eickhoff participates in the sale of SPIA contracts and other insurance products made to participants in the Hoffman CRAT Scheme. She sells insurance products to the customers participating in the Hoffman CRAT Scheme, and she receives compensation for each insurance product sold.

66.     In connection with the promotion of the Hoffman CRAT Scheme, Rhonda Eickhoff made, furnished, or caused another person to make false statements with respect to the excludability of income by reason of a customer's participation in the Hoffman CRAT Scheme. Specifically, Rhonda Eickhoff created and arranged for and/or published advertisements that falsely claimed to "legally forgive" or eliminate federal capital gains tax on the sale or other disposition of property. Rhonda Eickhoff knew or had reason to know that these statements were false or fraudulent. In addition, she was on notice that her statements were false because, among other reasons, the IRS informed Rhonda Eickhoff on several different occasions that these statements are contrary to the law.

67.     While promoting the Hoffman CRAT Scheme, Rhonda Eickhoff knew or had reason to know of the unreasonableness of Hoffman Associates' positions on the excludability of income connected with the sale of property made through the scheme. In addition, she was on notice of the unlawfulness of the positions because, among other reasons, the IRS informed her on several different occasions that these positions were contrary to the law.

### Defendants Aric Schreiner's and Columbia CPA Group's Participation in the Abusive Tax Scheme

68.     Defendants Aric Schreiner and Columbia CPA Group (collectively, the "Schreiner Defendants") promoted and continue to promote the Hoffman CRAT Scheme to the public.

69. John Eickhoff refers customers participating in the Hoffman CRAT Scheme to the Schreiner Defendants for tax return preparation services consistent with the Hoffman CRAT Scheme.

70. The Schreiner Defendants prepare federal tax returns for individuals participating in and CRATs associated with the Hoffman CRAT Scheme. The Schreiner Defendants receive compensation for each tax return they prepare on behalf of the individuals and the CRATs.

71. From 2015 through 2020, the Schreiner Defendants prepared at least 121 Forms 5227 filed with the IRS on behalf of the CRATs associated with the Hoffman CRAT Scheme, and prepared at least 22 of the Forms 1040 filed with the IRS for the customers participating in the Hoffman CRAT Scheme.

72. The Schreiner Defendants also prepared Schedules K-1 for the CRATs. The CRAT beneficiaries used the Schedules K-1 to report their respective shares of the CRAT's income, credits, and deductions on their federal income tax returns. On each Schedule K-1, the Schreiner Defendants underreported each CRAT beneficiary's share of taxable income.

73. The Schreiner Defendants prepared Schedules D and Forms 4797 connected with the Forms 5227 referenced in paragraph 71 above. The Schedules D and Forms 4797 list the gross sale price and cost basis for the properties sold through the CRATs.

74. On each Schedule D and Form 4797, the Schreiner Defendants overstated the cost basis in the properties transferred to the CRATs, resulting in a significant underreporting of taxable income realized through the sale of CRAT properties. Rather than carrying-over the grantor's cost basis in the properties transferred to the CRATs—as required under 26 U.S.C. § 1015(b)—the Schreiner Defendants improperly increased (stepped-up) each property's cost basis

to its estimated fair market value at the time of transference, in accordance with the Hoffman CRAT Scheme.

75. The Schreiner Defendants' improper and unlawful cost basis reporting resulted in the elimination or significant underreporting of taxable income for participants in the Hoffman CRAT Scheme.

76. On each Form 5227 they prepared, the Schreiner Defendants failed to report income realized by the CRAT from the sale of CRAT properties.

77. On each Form 5227 they prepared, the Schreiner Defendants improperly understated the CRAT's net income and total distributable net income for the respective tax year(s). The Schreiner Defendants improperly and unlawfully characterized the amounts reported in the "Current Distributions Schedule" on page 7 of each Form 5227 they prepared. Specifically, the Schreiner Defendants improperly and unlawfully characterized ordinary income and capital gains as trust corpus.

78. The Schreiner Defendants prepared the Schedules K-1 on behalf of the CRATs referenced in paragraph 71 above. On each Schedule K-1, the Schreiner Defendants improperly and unlawfully omitted or mischaracterized income required to be reported as ordinary income or capital gains.

79. The Schreiner Defendants' omission and mischaracterization of income on both the Forms 5227 and the Schedules K-1 they prepared resulted in a significant understatement of tax liability on the federal income tax returns for the customers participating in the Hoffman CRAT Scheme.

80. On each Form 1040 they prepared on behalf of the customers participating in the Hoffman CRAT Strategy, the Schreiner Defendants failed to report as gross income the CRAT

distributions received by the customers. The Schreiner Defendants' improper omission of gross income resulted in an understatement of taxable income on each customer's return that he prepared and filed with the IRS.

81.     The Schreiner Defendants drafted or assisted in the drafting of advertisements for the Hoffman CRAT Scheme. The advertisements claimed that Hoffman Associates could, among other things, legally forgive or eliminate capital gains tax on the sale or other disposition of property and eliminate inheritances taxes. The Schreiner Defendants knew or had reason to know that the statements were false or fraudulent. In addition, the Schreiner Defendants were on notice that their statements were false because, among other reasons, the IRS informed Aric Schreiner on several different occasions that their statements are contrary to the law.

82.     Aric Schreiner made, furnished, or caused another person to make or furnish statements with respect to the excludability of income by reason of participating in the Hoffman CRAT Scheme. Specifically, Aric Schreiner told participants that they could avoid paying federal income tax on property transferred to and sold through a CRAT under the Hoffman CRAT Scheme. Aric Schreiner knew or had reason to know that these statements were false or fraudulent because, among other reasons, the IRS informed Aric Schreiner on several different occasions that these statements are contrary to the law.

83.     Aric Schreiner made, furnished, or caused another person to make or furnish a gross valuation overstatement under 26 U.S.C. § 6700(b) with respect to the applicable tax basis in the CRAT property sold under the Hoffman CRAT Scheme. Specifically, Aric Schreiner told customers, or their representatives that a CRAT is not required to take the grantor's basis in property transferred to the CRAT. Aric Schreiner knew or had reason to know that these statements were false or fraudulent. In addition, he was on notice that his statements were false

because, among other reasons, the IRS informed Aric Schreiner on several different occasions that these statements are contrary to the law.

84.    Aric Schreiner told, customers, or their representatives that only the interest from the SPIA must be reported as taxable distributions on the CRAT's Form 5227. Aric Schreiner knew or had reason to know that this claim was false or fraudulent. In addition, he was on notice that his statements were false because, among other reasons, the IRS informed Aric Schreiner on several different occasions that these statements are contrary to the law.

85.    Aric Schreiner told customers, or their representatives that the CRATs organized under the Hoffman CRAT Scheme are exempt from federal income tax under 26 U.S.C. § 664(c), and, therefore, not required to report income received by the CRATs. Aric Schreiner knew or had reason to know that these statements were false or fraudulent. In addition, he was on notice that his statements were false because, among other reasons, the IRS informed Aric Schreiner on several different occasions that these statements are contrary to the law.

86.    Aric Schreiner has represented several of the participants in the Hoffman CRAT Scheme before the IRS during audits of the scheme. Aric Schreiner continues to defend the Hoffman CRAT Scheme as a legal arrangement and continues to promote the unlawful Hoffman CRAT Scheme to the public.

87.    While promoting the Hoffman CRAT Scheme, Aric Schreiner knew or had reason to know of the improper and unlawful tax avoidance structure of the scheme because, among other reasons, the IRS informed Aric Schreiner on several different occasions that the structure of the scheme is improper and unlawful.

88.    While promoting the Hoffman CRAT Scheme, Aric Schreiner knew or had reason to know that distributions made by a CRAT are required to be characterized in accordance with

the ordering rules set forth in 26 U.S.C. § 664(b) because, among other reasons, the IRS informed Aric Schreiner on several different occasions of its position.

89.     While promoting the Hoffman CRAT Scheme, Aric Schreiner knew or had reason to know that distributions from a CRAT under section 664(b) are taxable to beneficiaries to the extent of current and accumulated ordinary income, capital gains and other income because, among other reasons, the IRS informed Aric Schreiner on several different occasions of its position.

**Defendant John William Gray's
Participation in the Abusive Tax Scheme**

90.     John Eickhoff refers prospective customers interested in the Hoffman CRAT Scheme to John Gray.

91.     John Gray organized or assisted with the organization of CRATs for participants in the Hoffman CRAT Scheme. He drafted or assisted with the drafting of the CRAT instruments for the CRATs.

92.     John Gray has served as and continues to serve as the trustee for several of the CRATs associated with the Hoffman CRAT Scheme.

93.     John Gray received compensation for drafting each CRAT instrument. He also received compensation for the trustee services he provides to the CRATs.

94.     As a CRAT trustee, John Gray routinely hired Defendants Aric Schreiner and Damon Eisma to prepare tax returns for the CRATs associated with the Hoffman CRAT Scheme.

95.     John Gray provided John Eickhoff with opinion letters in defense of the legitimacy and legality of the Hoffman CRAT Scheme and the tax reporting connected to the transactions occurring within the scheme.

96.    John Gray consulted with and advised John Eickhoff on matters concerning the legitimacy and legality of the Hoffman CRAT Scheme while John Eickhoff was physically present at the Hoffman Associates office in Missouri.

97.    John Gray consulted with and advised Aric Schreiner and Damon Eisma on matters concerning the legitimacy and legality of the Hoffman CRAT Scheme.

98.    John Gray consulted with and advised Rhonda Eickhoff on matters concerning the legitimacy and legality of the SPIA contracts sold to and purchased by customers participating in the Hoffman CRAT Scheme.

99.    While advising on matters concerning the legitimacy and legality of the Hoffman CRAT Scheme, John Gray knew or had reason to know of the abusive and unlawful nature of the Hoffman CRAT Scheme. In addition, he was on notice that the CRAT scheme was abusive and unlawful because, among other reasons, the IRS informed John Gray on several different occasions that the Hoffman CRAT Scheme is an abusive and illegal tax arrangement.

**Defendant Damon Eisma's**
**Participation in the Abusive Tax Scheme**

100.    Defendants Damon Eisma promoted and continues to promote the Hoffman CRAT Scheme to the public.

101.    John Eickhoff refers customers participating in the Hoffman CRAT Scheme to Damon Eisma for tax return preparation services consistent with the Hoffman CRAT Scheme.

102.    Damon Eisma prepares federal tax returns for individuals participating in and CRATs associated with the Hoffman CRAT Scheme. Damon Eisma receives compensation for each tax return he prepares on behalf of the individuals and the CRATs.

103.    From 2015 through 2019, Damon Eisma prepared at least 21 of the Forms 5227 filed with the IRS on behalf of the CRATs associated with the Hoffman CRAT Scheme, and he

prepared at least 31 of the Forms 1040 files with the IRS on behalf of the customers participating in the Hoffman CRAT Scheme. Damon Eisma also prepared Schedules K-1 for the CRATs. The CRAT beneficiaries relied on the Schedules K-1 that Damon Eisma prepared to report their respective shares of the CRAT's income, credits, and deductions on their federal income tax returns. On each Schedule K-1, Damon Eisma underreported the beneficiary's share of taxable income.

104. Damon Eisma prepared the Schedules D and Forms 4797 connected with the Forms 5227 referenced in paragraph 103 above. The Schedules D and Forms 4797 listed the gross sale price and cost basis for the properties sold through the CRATs.

105. On each Schedule D and Form 4797, Damon Eisma overstated the cost basis in the properties transferred to the CRATs, resulting in underreporting of taxable income realized through the sales of CRAT properties. Rather than carrying-over the grantors' cost basis in properties transferred to a CRAT—as required under 26 U.S.C. § 1015(b)— Damon Eisma improperly increased (stepped-up) each property's cost basis to its estimated fair market value at the time of the transfer, in accordance with the Hoffman CRAT Scheme.

106. Damon Eisma's improper and unlawful cost basis reporting has resulted in the omission of income and understatement of the Hoffman CRAT Scheme customers' income tax liabilities on their federal income tax returns.

107. On each of the Forms 5227 he prepared, Damon Eisma failed to report income realized by the CRATs from the sales of CRAT properties.

108. On each Form 5227 he prepared, Damon Eisma improperly understated the CRAT's net income and total distributable net income for the respective tax year. Damon Eisma improperly and unlawfully characterized the amounts reported in the "Current Distributions

Schedule" on page 7 of each Form 5227 he prepared. Specifically, Damon Eisma improperly and unlawfully characterized ordinary income and capital gains as trust corpus for each CRAT.

109. Damon Eisma prepared the Schedules K-1 on behalf of the CRATs referenced in paragraph 103 above. On each Schedule K-1, Damon Eisma improperly and unlawfully omitted or mischaracterized income required to be reported as ordinary income or capital gains.

110. Damon Eisma's omission and mischaracterization of income on both the Forms 5227 and the Schedules K-1 he prepared resulted in an understatement of taxable income for the participants in the Hoffman CRAT Scheme.

111. On each Form 1040 he prepared on behalf of the customers participating in the Hoffman CRAT Strategy, Damon Eisma failed to report as gross income the CRAT distributions received by the customers. Damon Eisma's improper omission of gross income resulted in an understatement of taxable income on each customer's return that he prepared and filed with the IRS.

112. Damon Eisma drafted or assisted in the drafting of advertisements for the Hoffman CRAT Scheme. The advertisements claimed that Hoffman Associates could legally forgive or eliminate a customer's capital gains taxes and eliminate a customer's inheritances taxes. Damon Eisma knew or had reason to know that the statements were false or fraudulent. In addition, he was on notice that the statements were false because the IRS informed Damon Eisma on several different occasions that these claims are contrary to the law.

113. Damon Eisma made, furnished, or caused another person to make or furnish false statements with respect to the excludability of income by reason of participating in the Hoffman CRAT Scheme. Specifically, Damon Eisma told customers or their representatives that they could avoid paying federal income tax on property sold through the Hoffman CRAT Scheme.

Damon Eisma knew or had reason to know that these statements were false or fraudulent. In addition, he was on notice that the statements were false because the IRS informed Damon Eisma on several different occasions that these statements are contrary to the law.

114.     Damon Eisma made, furnished, or causes another person to make or furnish a gross valuation overstatement under 26 U.S.C. § 6700(b) with respect to the applicable tax basis in the CRAT property sold under the Hoffman CRAT Scheme. Specifically, Damon Eisma told customers, or their representatives that a CRAT is not required to take the grantor's basis in property transferred to the CRAT, and he unlawfully reported a stepped-up cost basis in property transferred to the CRATs on each Form 5227 he prepared. Damon Eisma knew or had reason to know that these statements and actions were false or fraudulent. In addition, he was on notice that the statements were false because the IRS informed Damon Eisma on several different occasions that these statements and actions are contrary to the law.

115.     Damon Eisma told customers, or their representatives that only the interest from the SPIA must be reported as taxable distributions on the CRAT's Form 5227. Damon Eisma knew or had reason to know that these statements were false or fraudulent. In addition, he was on notice that the statements were false because the IRS informed Damon Eisma on several different occasions that these statements are contrary to the law.

116.     Damon Eisma told customers, or their representatives that the CRATs organized under the Hoffman CRAT Scheme are exempt from federal income tax under 26 U.S.C. § 664(c), and, therefore, not required to report income received by the CRATs. Damon Eisma knew or had reason to know that these statements were false or fraudulent. In addition, he was on notice that the statements were false because the IRS informed Damon Eisma on several different occasions that these statements are contrary to the law.

117. Damon Eisma has represented several of the Hoffman CRAT Scheme customers before the IRS during audits connected with the scheme. Damon Eisma continues to defend the Hoffman CRAT Scheme as a legal arrangement and continues to promote the Hoffman CRAT Scheme to the public.

118. While promoting the Hoffman CRAT Scheme, Damon Eisma knew or had reason to know of the improper and unlawful tax avoidance structure of the scheme. In addition, he was on notice that the Hoffman CRAT Scheme was improper and unlawful because the IRS informed Damon Eisma on several different occasions that the structure of the scheme is false and improper.

119. While promoting the Hoffman CRAT Scheme, Damon Eisma knew or had reason to know that the distributions made by the CRATs were required to be characterized in accordance with the ordering rules set forth in 26 U.S.C. § 664(b). In addition, he was on notice of this statutory requirement because the IRS informed Damon Eisma of the requirement on several different occasions.

120. While promoting the Hoffman CRAT Scheme, Damon Eisma knew or had reason to know that, under 26 U.S.C. § 664(b), the distributions from the CRATs are taxable to beneficiaries to the extent of current and accumulated ordinary income, capital gains and other income. In addition, he was on notice of this statutory requirement because the IRS informed Damon Eisma of the requirement on several different occasions.

## Hoffman CRAT Scheme Customer Examples

### Customer #1

121.     Customer #1 became aware of the Hoffman CRAT Scheme by viewing an advertisement created by the Eickhoff Defendants. Customer #1 contacted John Eickhoff for more information about the scheme.

122.     John Eickhoff made false statements to Customer #1 about the tax benefits derived through participation in the Hoffman CRAT Scheme, and he provided Customer #1 with promotional materials about the scheme.

123.     John Eickhoff organized or assisted in the organization of a CRAT for Customer #1 in 2015. John Eickhoff referred Customer #1 to a business associate to prepare the CRAT instrument for the CRAT, and to serve as trustee of the CRAT.

124.     In accordance with the Hoffman CRAT Scheme, Customer #1 transferred 100,000 bushels of corn and 10,000 bushels of soybeans to the CRAT. Customer #1 had a cost basis of $0 in the bushels of corn and a cost basis of $0 in the bushels of soybeans at the time Customer #1 transferred the produce to the CRAT.

125.     In accordance with the Hoffman CRAT Scheme, the trustee sold the 100,000 bushels of corn and 10,000 bushels of soybeans (referred to above) for $376,044 and $92,959, respectively, within two months of organizing the CRAT. The CRAT trustee segregated a portion of the sale proceeds for the charitable remainder interest and made an early distribution of the charitable remainder interest to a designated charity. The trustee used the remaining portion of the sale proceeds to purchase a SPIA contract.

126.     The SPIA contract required annuity payments to be made to Customer #1 for a period of five years. Rhonda Eickhoff directly or indirectly participated in the sale of the SPIA contract to Customer #1.

127.     In accordance with the Hoffman CRAT Scheme, the CRAT improperly characterized approximately 98% of the distributions made under the SPIA contract to Customer #1 as distributions of trust corpus rather than distributions of income.

128.     John Eickhoff engaged the Schreiner Defendants to prepare the 2015 Form 5227 for Customer #1's CRAT, in conformity with the Hoffman CRAT Scheme.

129.     The Schreiner Defendants prepared the 2015 Form 5227 for Customer #1's CRAT and prepared the 2015 Schedules K-1 for Customer #1. The CRAT did not file a 2015 tax return that reported the gross income resulting from the CRAT despite being required to do so.

130.     On the 2015 Form 5227, the Schreiner Defendants improperly increased (or stepped-up) the CRAT's cost basis in the produce that had been transferred to the CRAT. The Schreiner Defendants reported the CRAT's cost basis in the produce as $471,000—the total estimated value of the produce at the time Customer #1 transferred the produce to the CRAT. The Schreiner Defendants' improper reporting of the CRAT's basis in the produce caused an underreporting of approximately $469,931.00 in distributable net income on the CRAT's 2015 Form 5227.

131.     On the 2015 Schedules K-1 provided to Customer #1, the Schreiner Defendants failed to characterize and properly report the distributions of payments made under the SPIA contract to Customer #1 during 2015, as required under 26 U.S.C. § 664(b). The Schreiner Defendants' failure to properly characterize and report the distributions made to Customer #1

resulted in an underreporting of $83,440 in taxable income and an approximate understatement of up to $16,688 in tax liabilities on Customer #1's 2015 federal income tax return.

132. Customer #1's participation in the Hoffman CRAT Scheme, together with Defendants' actions, resulted in a total underreporting of $469,931 in taxable income and an approximate understatement of up to $93,986.20 in tax liabilities for Customer #1 from tax years 2015 through 2019.

### Customer #2

133. John Eickhoff promoted the Hoffman CRAT Scheme to Customer #2.

134. John Eickhoff organized or assisted in the organization of a CRAT for Customer #2 in 2016. John Eickhoff referred Customer #2 to a business associate to prepare the CRAT instrument for the CRAT and to serve as trustee of the CRAT.

135. In accordance with the Hoffman CRAT Scheme, Customer #2 transferred appreciated real property to the CRAT. The total estimated fair market value of the real property was approximately $1,745,934 at the time Customer #2 transferred it to the CRAT. Customer #2's cost basis in the real property was approximately $619,468 at the time Customer #2 transferred the property to the CRAT.

136. In accordance with the Hoffman CRAT Scheme, the trustee sold the real property for $1,750,000 within two months of organizing the CRAT. The CRAT trustee segregated a portion of the sale proceeds for the charitable remainder interest and made an early distribution of the charitable remainder interest to a designated charity. The trustee used the remaining portion of the sale proceeds to purchase a SPIA contract.

137.    The SPIA contract required annuity payments to be made to Customer #2 for a period of five years. Rhonda Eickhoff directly or indirectly participated in the sale of the SPIA contract to Customer #2.

138.    In accordance with the Hoffman CRAT Scheme, the CRAT characterized approximately 99% of the distributions made under the SPIA contract to Customer #2 as distributions of trust corpus rather than distributions of income.

139.    John Eickhoff or the trustee engaged the Schreiner Defendants to prepare the 2016 Form 5227 to the Schreiner Defendants for tax advice and return preparation services consistent with the Hoffman CRAT Scheme.

140.    The Schreiner Defendants prepared the 2016 Form 5227 for Customer #2's CRAT and prepared the 2016 Schedules K-1 for Customer #2. The CRAT did not file a 2016 federal income tax return that reported the gross income resulting from the CRAT despite being required to do so.

141.    On the 2016 Form 5227, the Schreiner Defendants improperly increased (or stepped-up) the CRAT's cost basis in the real property that Customer #2 had transferred to the CRAT. The Schreiner Defendants reported the CRAT's cost basis in the property as $2,934,376—the estimated fair market value of the property at the time Customer #2 transferred the property to the CRAT. The Schreiner Defendants' improper increase in the basis of the CRAT property caused an underreporting of $312,144 in distributable net income on the CRAT's 2016 Form 5227.

142.    On the 2016 Schedules K-1 provided to Customer #2, the Schreiner Defendants failed to characterize and properly report the distributions of payments made under the SPIA contract to Customer #2 during 2016, as required under 26 U.S.C. § 664(b). The Schreiner

Defendants failure to properly characterize and report the distributions made to Customer #2 resulted in an underreporting of $312,144 in taxable income and an approximate understatement of up to $62,428.80 in tax liabilities on Customer #2's 2016 federal income tax return.

143.     Customer #2's participation in the Hoffman CRAT Scheme, together with Defendants' actions, will result in a total underreporting of approximately $1,126,466 in taxable income and an approximate understatement of up to $225,293.20 in tax liabilities for Customer #2 from tax years 2016 through 2020.

## Customer #3

144.     John Eickhoff promoted the Hoffman CRAT Scheme to Customer #3.

145.     John Eickhoff organized or assisted in the organization of a CRAT for Customer #3 in 2015. John Eickhoff referred Customer #3 to John Gray to prepare the CRAT instrument for the CRAT, and to serve as trustee of the CRAT. John Gray's law firm prepared the CRAT instrument and served as trustee of the CRAT.

146.     In accordance with the Hoffman CRAT Scheme, Customer #3 transferred four parcels of appreciated real property to the CRAT. The four parcels of real property had a total estimated fair market value of $1,808,000 at the time Customer #3 transferred it to the CRAT. Customer #3's total cost basis in the four parcels of real property was approximately $180,538 at the time Customer #3 transferred it to the CRAT.

147.     In accordance with the Hoffman CRAT Scheme, the trustee sold the four parcels of real property that Customer #3 had transferred to the CRAT for a total of $1,658,000 within approximately four months of organizing the CRAT. The trustee sold two parcels in December 2015 for $900,000, and sold the two remaining parcels in March 2016 for $758,000.

148.    The trustee segregated a portion of the total sale proceeds for the charitable remainder interest and made an early distribution of the charitable remainder interest to a designated charity. The trustee used the remaining portion of the sale proceeds to purchase a SPIA contract.

149.    The SPIA contract required annuity payments to be made to Customer #3 for a period of five years. Rhonda Eickhoff directly or indirectly participated in the sale of the SPIA contract to Customer #3.

150.    In accordance with the Hoffman CRAT Scheme, the CRAT characterized approximately 99% of the distributions made under the SPIA contract to Customer #3 as distributions of trust corpus rather than distributions of income.

151.    The Schreiner Defendants prepared the 2015 and 2016 Forms 5227 for Customer #3's CRAT, and prepared the 2015 and 2016 Schedules K-1 for the CRAT. The CRAT did not file 2015 or 2016 tax returns that reported the gross income resulting from the CRAT despite being required to do so.

152.    On the 2015 Form 5227, the Schreiner Defendants improperly increased (or stepped-up) the CRAT's cost basis in the two parcels of property sold through the CRAT in December 2015. The Schreiner Defendants reported the CRAT's collective cost basis in the two parcels of property as $933,729—the total estimated fair market value of the property at the time Customer #3 transferred the property to the CRAT. In connection with the sale of the two parcels of CRAT property, the Schreiner Defendants reported that the CRAT incurred a net loss of $33,729. The Schreiner Defendants' improper increase in the cost basis of the CRAT property caused an underreporting of $857,146 in distributable net income on the CRAT's 2015 Form 5227.

153.    On the 2016 Form 5227, the Schreiner Defendants failed to report the income received by the CRAT in connection with the sale of two parcels of CRAT property in March 2016. The Schreiner Defendants' failure to report the income received through the sale caused an underreporting of $610,316 in recognized gains on the CRAT's 2016 Form 5227.

154.    On the 2016 Schedules K-1 provided to Customer #3, the Schreiner Defendants failed to characterize and properly report the distributions of payments made under the SPIA contract to Customer #3 during 2016, as required under 26 U.S.C. § 664(b). The Schreiner Defendants' failure to properly characterize and report the distributions made to Customer #3 resulted in an underreporting of $307,656 in taxable income and an approximate understatement of up to $61,531.20 in tax liabilities on Customer #3's 2016 federal income tax return.

155.    Customer #3's participation in the Hoffman CRAT Scheme, together with Defendants' actions, has resulted in a total underreporting of approximately $1,477,462 in taxable income and an approximate understatement of up to $295,492.40 in tax liabilities for Customer #3 from tax years 2016 through 2020.

**Estimated Harm Caused by Defendants' Abusive Tax Scheme**

156.    Defendants' promotion and unlawful operation of the Hoffman CRAT Scheme to eliminate taxable income have harmed and continue to harm the United States Treasury and the public.

157.    The IRS completed audits for 19 of the approximately 70 known CRATs associated with the Hoffman CRAT Scheme to determine the accuracy of the reporting of income from the sale of CRAT property. The IRS estimates the total understatement of taxable income for these CRATs exceeded $17,000,000—with an average of understatement of approximately $900,000 per CRAT.

158.     The IRS estimates that through the promotion and unlawful operation of the

Hoffman CRAT Scheme, Defendants have caused the United States to incur at least $8,000,000

in tax revenue losses. The harm could be much greater depending on the actual number of

CRATS and the understatement of distributable income flowing from the CRATs.

159.     Defendants have been unjustly enriched by promoting and operating the Hoffman

CRAT Scheme at the expense of the United States Treasury.

160.     Defendants' misconduct further harms the United States and the public by

requiring the IRS to devote resources to detecting Defendants' fraud and recouping the taxes

owed on the unreported income received by Defendants' customers through the Hoffman CRAT

Scheme.

161.     Defendants Aric Schreiner, Columbia Group, and Damon Eisma further harm the

public by preparing, assisting in the preparation of, or causing another person to prepare or assist

in the preparation of inaccurate tax returns that significantly understate their customers' income

tax liabilities and illegally cause customers to incorrectly report and underpay their federal tax

liabilities.

162.     The harm to the United States and the public will continue and likely increase

unless Defendants are enjoined. An injunction will serve the public interest because it will

permanently end Defendants' illegal conduct and the harm that such conduct causes  its citizens.

### COUNT I
### Injunction against All Defendants under 26 U.S.C. § 7408

163.     The United States incorporates by reference the allegations in paragraphs 1

through 162 as if set forth herein.

164.     Section 7408(a) authorizes a district court to enjoin any person from engaging in

conduct subject to penalty under 26 U.S.C. § 6700 if injunctive relief is appropriate to prevent

the recurrence of the conduct or any other activity subject to penalty under the Internal Revenue Code.

165.    Section 6700 imposes a civil penalty on any person who: (1) organizes or assists in the organization of a plan or arrangement or participates in the sale of any interest in a plan or arrangement; and (2) makes or furnishes, or causes another to make or furnish, certain statements.

166.    Statements subject to penalty include those with respect to excludability of any income or the securing of a tax benefit by reason of holding an interest in an entity or participating in a plan or arrangement that the person has reason to know is false or fraudulent as to any material matter. 26 U.S.C. § 6700(a)(2)(A).

167.    Another statement subject to penalty is a "gross valuation overstatement as to any material matter." 26 U.S.C. § 6700(a)(2)(B). A gross valuation overstatement is "any statement as to the value of any property or services" if the value of the property or services is directly related to the amount of any tax deduction or credit and the stated value is more than 200 percent of the correct value of the property or services. 26 U.S.C. § 6700(b)(1).

168.    The Hoffman CRAT Scheme is a plan or arrangement within the meaning of 26 U.S.C. § 6700.

169.    Defendants organized, promoted, or sold—or assisted in the organization, promotion, or selling of—the Hoffman CRAT Scheme to many individuals.

170.    In connection with the Hoffman CRAT Scheme, Defendants made, furnished, or caused another person to make or furnish false or fraudulent statements with respect to the excludability of income (specifically capital gains) and the securing of a tax benefit by reason of

participating in the scheme. Defendants knew or had reason to know that these statements were false or fraudulent within the meaning of 26 U.S.C. § 6700(a)(2)(A).

171.    In connection with the Hoffman CRAT Scheme, Defendants made, furnished, or caused another person to make or furnish gross valuation overstatements within the meaning of 26 U.S.C. § 6700(a)(2)(B).

172.    Defendants continue to promote the Hoffman CRAT Scheme to the public and will likely continue to promote the Hoffman CRAT Scheme unless enjoined. If Defendants are not enjoined, the United States Treasury will continue to suffer irreparable financial harm as a result of the significant underreporting or omission of taxable income connected with the Hoffman CRAT Scheme, as referenced in paragraphs 157 and 158.

173.    Enjoining Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendants' illegal conduct and the harm the conduct causes to the United States Treasury.

174.    Defendants engaged in conduct—including but not limited to the conduct described in this Amended Complaint—that is subject to penalty under 26 U.S.C. § 6700, and an injunction under 26 U.S.C. § 7408 is therefore appropriate to prevent the recurrence of such conduct.

## COUNT II
## Injunction against Schreiner Defendants under 26 U.S.C. § 7407

175.    The United States incorporates by reference the allegations in paragraphs 1 through 162 as if set forth herein.

176.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from, among other things, engaging in conduct subject to penalty under 26 U.S.C. § 6694 or conduct that substantially interferes with the proper administration of the

internal revenue laws, 26 U.S.C. § 7407(b)(1)(D). Section 7701(a)(36) defines "tax return preparer" to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

177. Section 6694 imposes penalties on a tax return preparer for the understatement of a tax liability due to: (a) an unreasonable position; (b) a willful attempt to understate a tax liability; or (c) a reckless or intentional disregard of internal revenue rules or regulations.

178. If a tax return preparer has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694, or any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, then the court may enjoin the person from acting as a tax return preparer altogether.

179. Defendants Aric Schreiner, Columbia Group, and Damon Eisma are tax return preparers within the meaning of 26 U.S.C. § 7701(a)(36) because they prepare tax returns or substantial portions of tax returns for compensation and/or employ one or more persons to prepare tax returns or substantial portions of tax returns for compensation.

180. Defendants Aric Schreiner, Columbia Group, and Damon Eisma prepared, or employed others to prepare, tax returns or substantial portions of the tax returns that willfully understated the correct tax liabilities for customers participating in the Hoffman CRAT Scheme. Defendants Aric Schreiner, Columbia Group, and Damon Eisma showed and continue to show a blatant and intentional disregard for the internal revenue laws by failing to: (a) apply and account for the proper cost basis in property transferred to and sold through the CRATs, in accordance with 26 U.S.C. § 1015(b); (b) properly characterize the distributions of income made by the

CRATs to customer-beneficiaries, in accordance with 26 U.S.C. § 664(b); and (c) report the distributions of CRAT income received by customers on the tax returns they prepared.

181.    The unreasonable positions taken by Defendants Aric Schreiner, Columbia Group, and Damon Eisma, referenced above, resulted in the continual and repeated filing of tax returns that understated tax liability in violation of 26 U.S.C. § 6694(a), and an intentional or reckless disregard of the tax rules or regulations in violation of 26 U.S.C. § 6694(b). Defendants Aric Schreiner, Columbia Group, and Damon Eisma knew or reasonably should have known of the unreasonable positions they repeatedly asserted on their customers' tax returns in violation of 26 U.S.C. § 6694(a) and (b).

182.    Section 7407 also authorizes a court to enjoin tax return preparers who have "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." 26 U.S.C. § 7407(b)(1)(D).

183.    By promoting or assisting with the promotion of the Hoffman CRAT Scheme, and by preparing tax returns that conform to the unreasonable positions promoted through the Hoffman CRAT Scheme, Defendants Aric Schreiner, Columbia Group, and Damon Eisma have continually and repeatedly engaged in conduct subject to penalties under 26 U.S.C. § 6694 and conduct that substantially interferes with the proper administration of the internal revenue laws. Injunctive relief is therefore appropriate under 26 U.S.C. § 7407.

184.    If Defendants Aric Schreiner, Columbia Group, and Damon Eisma are not enjoined from preparing federal tax returns, they are likely to continue preparing and filing substantially inaccurate or false tax returns that cause serious economic harm to the United States and require the United States to dedicate resources to the examination of their customers' tax returns (exposing such customers to large tax liabilities that include penalties and interest).

185.     Therefore, Defendants Aric Schreiner, Columbia Group, and Damon Eisma should be permanently barred from acting as federal tax return preparers and from owning, operating, managing, controlling, licensing, franchising, working for, or volunteering at a tax return preparation business.

## COUNT III
## Injunction against Defendants under 26 U.S.C. § 7402

186.     The United States incorporates by reference the allegations in paragraphs 1 through 162 as if set forth herein.

187.     Section 7402(a) of the Internal Revenue Code authorizes a district court to issue injunctions and to render judgments that may be necessary or appropriate for the enforcement of the internal revenue laws even when the United States may have other remedies available for enforcing those laws.

188.     Defendants, through the actions described above, have engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws. Defendants, through their collective conduct, have caused an estimated $40,000,000 of taxable income to go unreported, resulting in upwards of at least $8,000,000 in tax revenue loss to the United States Treasury.

189.     Despite having knowledge of the abusive and illegal nature of the Hoffman CRAT Scheme, Defendants continue to promote the Hoffman CRAT Scheme and continue to willfully make false or fraudulent statements about the tax avoidance benefits derived through participation in the scheme.

190.     By reason of their participation in the Hoffman CRAT Scheme, Defendants' customers continue to wholly omit or significantly underreport taxable income on their federal income tax returns.

191.     Defendants' conduct in connection with promoting or assisting with the promotion of the Hoffman CRAT Scheme, and Defendants Aric Schreiner's, Columbia Group's, and Damon Eisma's preparation of tax returns in conformity with the Hoffman CRAT Scheme, has caused and is causing substantial revenue loss to the United States Treasury, some of which may be unrecoverable.

192.     If Defendants are not enjoined, they will likely continue to engage in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6694, and conduct that interferes with the enforcement of the internal revenue laws.

193.     Unless Defendants are enjoined, the IRS will have to continue to devote time and resources to resolving the omission or underreporting of taxable income by those participating in the Hoffman CRAT Scheme. The burden of pursuing the cases may be significant, given the IRS's limited resources. Thus, it is in the public interest to enjoin the Defendants' illegal conduct and the harm it causes the United States.

## COUNT IV
### Disgorgement under 26 U.S.C. § 7402 against all Defendants

194.     The United States incorporates by reference the allegations in paragraphs 1 through 162 as if set forth herein.

195.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

196.     Defendants have unjustly profited at the expense of the United States by charging customers fees for participating in the Hoffman CRAT Scheme and for the services and products offered in connection with the Hoffman CRAT Scheme (e.g., tax preparation services, trustee

Case 2:22-cv-04027-MDH   Document 4   Filed 03/09/22   Page 43 of 48

services, insurance products, etc.) which Defendants knew hinged upon the improper omission and underreporting of taxable income received by their customers.

197. Defendants are not entitled to these ill-gotten gains. But for the Defendants' conduct, customers would not have received the unlawful and improper tax benefits.

198. The Court should enter an order under 26 U.S.C. § 7402(a) requiring Defendants to disgorge to the United States the ill-gotten gains that Defendants received for their participation in the Hoffman CRAT Scheme.

**Relief Sought**

WHEREFORE, the United States respectfully requests and prays for the following relief on Counts I through IV of its Amended Complaint:

A. That the Court find that Defendants John Hugo Eickhoff, Jr., Rhonda Kaye Eickhoff, Hoffman Associates, LLC, Aric Elliot Schreiner, Columbia CPA Group LLC, John Gray, and Damon Eisma have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6700, that they have engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the internal revenue laws, and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent further misconduct;

B. That the Court find that Defendants Aric Elliot Schreiner, Columbia CPA Group LLC, and Damon Eisma have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694, that they have repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the internal revenue laws, that injunctive relief against them is appropriate under 26 U.S.C. § 7407, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

C.       That the Court find that Defendants John Hugo Eickhoff, Jr., Rhonda Kaye Eickhoff, Hoffman Associates, LLC, Aric Elliot Schreiner, Columbia CPA Group LLC, John Gray, and Damon Eisma have each engaged in conduct that substantially interfered with the enforcement and administration of the internal revenue laws, and that injunctive relief against them is therefore appropriate under the Court's inherent equity powers and 26 U.S.C. § 7402(a) to prevent further misconduct;

D.       That the Court enter a permanent injunction, under 26 U.S.C. §§ 7402(a) and 7407, prohibiting Defendants Aric Elliot Schreiner, Columbia CPA Group LLC, and Damon Eisma from acting as federal tax return preparers and from owning, operating, managing, controlling, licensing, franchising, working for, or volunteering at a tax return preparation business;

E.       That the Court enter a permanent injunction, under 26 U.S.C. §§ 7402(a) and 7408, prohibiting Defendants John Hugo Eickhoff, Jr., Rhonda Kaye Eickhoff, Hoffman Associates, LLC, Aric Elliot Schreiner, Columbia CPA Group LLC, John Gray, and Damon Eisma, and their representatives, agents, employees, and any other person in active concert or participation with them, from directly or indirectly:

1. Making or furnishing or causing another person to make or furnish a statement with respect to the allowability of any tax deduction or credit, the excludability of any income, or the securing of any other tax benefit, or otherwise providing tax advice, in exchange for compensation or the promise of compensation;

2. Calculating, purporting to calculate, or offering to calculate the cost basis in property for any person or entity;

3. Organizing, promoting, selling, or assisting in the organization, promotion, or sale of any plan or arrangement concerning the charitable remainder annuity trust scheme described herein or any other trust arrangement under 26 U.S.C. § 664;

4. Encouraging or advising others, or assisting in encouraging or advising others, to omit income distributed through a trust in exchange for compensation or any promise of compensation;

5. Organizing, promoting, selling, or assisting in the organization, promotion, or sale of any plan or arrangement that advises or assists taxpayers in attempting to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

6. Preparing, or aiding or assisting in the preparation of federal tax returns, information returns, amended returns, or other tax documents or forms, that claim any tax benefits resulting from participation in a charitable remainder annuity trust arrangement or other trust arrangement under 26 U.S.C. § 664;

7. Participating in the organization, promotion, or administration of any charitable remainder annuity trust or other trust arrangement under 26 U.S.C. § 664; and

8. Receiving money from any tax return preparation business or the sale or promotion of any tax services, tax advice, or tax strategies to others.

F.     That the Court enter a permanent injunction, under 26 U.S.C. §§ 7402(a) and 7407, prohibiting Defendants Aric Elliot Schreiner, Columbia CPA Group LLC, and Damon Eisma, and their representatives, agents, employees, and anyone in active concert or participation with them, from acting as federal tax return preparers and from owning, operating, managing, controlling, licensing, franchising, working for, or volunteering at a tax return preparation business.

G.     That the Court, under 26 U.S.C. § 7402, enter an order requiring the Eickhoff Defendants to, within 30 days of receiving the Court's order:

1. Produce to counsel for the United States a complete list of customers who participated in the Hoffman CRAT Scheme or any other charitable remainder trust arrangement promoted by the Eickhoff Defendants, from January 1, 2014 through the present. The list shall be in the form of an Excel spreadsheet, and include each customer's name, address, email address, telephone number, and the last four digits of their social security number. If the customer was a married couple, include all information for both spouses.

2. Produce to counsel for the United States a complete list of CRATs that participated in the Hoffman CRAT Scheme or any other trust plan or arrangement

under 26 U.S.C. § 664, from January 1, 2014 through the present. The list shall be in the form of an Excel spreadsheet, and include each CRAT's name, grantors, trustee, beneficiaries, and termination date.

3. Provide copies of the Court's order, permanent injunction, and IRS Chief Counsel Advice (CCA) Memorandum, dated February 11, 2020—and only the order, injunction, and CCA to all principals, officers, franchises, managers, employees, independent contractors, and tax return preparers of the Defendants, and provide to counsel for the United States within 45 days a signed and acknowledgment of receipt of the Court's order, permanent injunction, and CCA for each person to whom Defendants provided a copy of the Court's order, permanent injunction, and CCA.

4. Provide copies of the Court's order, permanent injunction, and IRS Chief Counsel Advice (CCA) Memorandum, dated February 11, 2020—and only the order, injunction, and CCA—to all customers of the Defendants who participated in the Hoffman CRAT Scheme or any charitable remainder annuity trust arrangement promoted or organized by Defendants, and provide to counsel for the United States within 45 days a signed and acknowledgement of receipt of the Court's order, permanent injunction, and CCA for each person to whom Defendants provided a copy of the Court's order, permanent injunction, and CCA.

5. Immediately shut down the Hoffman Associates website (www.hoffman-assoc.com) and publish a copy of the Court's order to any other web-based site, to include social media sites, that any of the Defendants use to promote or market tax planning schemes or arrangements to the public.

6. Immediately cancel any advertisements that promote the Hoffman CRAT Scheme or any other scheme or arrangement that purports to legally forgive or eliminate capital gains tax, inheritance tax, or any other tax.

7. File a declaration with the Court, sworn under penalty of perjury, that they have complied with each of the requirements listed in paragraph G(1) through (6) above.

H. That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Defendants to disgorge to the United States the ill-gotten gains—the amount of which is to be determined by the Court—that they received from promoting the Hoffman CRAT Scheme.

I. That the Court allow the United States to engage in post-judgment discovery to monitor Defendants' compliance with the injunction;

J.      That the Court retain jurisdiction over this action to enforce any permanent injunction against Defendants; and

K.      That the Court grant the United States such additional relief as the Court deems just and proper.


Dated: March 9, 2022

Respectfully submitted,

TERESA A. MOORE
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Russell J. Edelstein*
RUSSELL J. EDELSTEIN
MA Bar No.: 663227
JUSTIN M. FONTAINE
Cal. Bar No.: 323357
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7328 – Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-2704 (Edelstein)
Tel: (202) 514-5085 (Fontaine)
Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
justin.m.fontaine@usdoj.gov
*Attorneys for Plaintiff United States*