IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-04027-MDH |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN HUGO EICKHOFF, JR., | ) | |
| RHONDA KAYE EICKHOFF, | ) | |
| HOFFMAN ASSOCIATES, LLC, | ) | |
| ARIC ELLIOT SCHREINER, | ) | |
| COLUMBIA CPA GROUP LLC, | ) | |
| JOHN WILLIAM GRAY II, and | ) | |
| DAMON THOMAS EISMA, individually | ) | |
| and d/b/a DAMON T. EISMA | ) | |
| ATTORNEY AT LAW, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**UNITED STATES' STATEMENT OF UNCONTROVERTED
MATERIAL FACTS AND SUGGESTIONS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT**

TERESA A. MOORE
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

RUSSELL J. EDELSTEIN
MA Bar No. 663227
NATHAN D. BANEY
VA Bar No. 75935
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7328
Washington, D.C. 20044
*Attorneys for Plaintiff*
*United States of America*

# TABLE OF CONTENTS

Statement of Uncontroverted Material Facts ……………………………………….... p. 1

  Background ………………………………………………………………… p. 1

The CRAT Strategy …………………………………………………………… p. 2

Schreiner/Columbia's Involvement in the CRAT Strategy ……………………… p. 5

Schreiner/Columbia's Role Defending the CRAT Strategy
      Before the IRS ……………………………………………………… p. 12

Schreiner/Columbia's Notice that the CRAT Strategy
      is Illegal and Their Recent Conduct …………………………………… p. 14

Argument ……………………………………………………………………… p. 18

I.    26 U.S.C. § 1015 Precludes Schreiner's Claims that Transferring Property
to a CRAT Transforms it to Allow Capital Gains Taxes to "Vanish." …….. p. 19

II.    Use of a SPIA Does Not Avoid the Ordering Rules of 26 U.S.C. § 664 to
Eliminate Capital Gains Taxes on CRAT Distributions. ………………….. p. 22

III.    Schreiner's Claims as to the Benefits of CRATs Far Exceed Their
Legitimate Tax Benefits and Rely on Scant Support or a Misreading of his
Purported Authority. ………………………………………………….. p. 24

IV.    An Injunction Under Section 7402 is Necessary and Appropriate to Enjoin
Schreiner and Columbia. ……………………………………………... p. 26

Conclusion (including proposed order) …………………………………………... p. 29

i

## <u>TABLE OF AUTHORITIES</u>

*Abdo v. IRS*, 234 F. Supp. 2d 553 (M.D.N.C. 2002) ………………………… p. 29

*Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2023) …………………....... pp. 26-28

*Furrer v. Comm'r*, 2022 Tax. Ct. Memo LEXIS 102 ………………………... pp. 15, 18, 20, (Tax Ct. Sept. 28, 2022) 23-24, 28

*Gerhardt v. Comm'r*, 2023 U.S. Tax. Ct. LEXIS 1956 ……………………… pp. 15, 18, 20- (Tax Ct. Apr. 20, 2023) 22, 24, 26, 29

*Miller v. C.I.R.*, 2009 Tax Ct. Memo LEXIS 183 (Tax Ct. Aug. 10, 2009) …. p. 23

*United States v. Estate Preservation Servs.*, 202 F.3d 1093 (9th Cir. 2000) … p. 20

*United States v. Hall*, 2013 U.S. Dist. LEXIS 183838 ……………………… pp. 27-29 (W.D. Mo. Sept. 25, 2013)

*United States v. Hansen*, 2006 U.S. Dist. LEXIS 54496 …………………….. pp. 26-28, (S.D. Cal. Jun. 1, 2006) 31 n.38

*United States v. Harrington*, 2019 U.S. Dist. LEXIS 62858 ………………… p. 27 (E.D. Mo. Feb. 4, 2019)

*United States v. Preiss*, 2008 U.S. Dist. LEXIS 46000 ……………………… pp. 27-28 (M.D.N.C. Jun. 11, 2008)

*United States v. ITS Fin., LLC*, 592 Fed. Appx. 387 (6th Cir. 2014) ………... p. 26

*United States v. Scott*, 37 F.3d 1564 (10th Cir. 1994) ………………………. p. 20

*United States v. Sonibare*, 2006 U.S. Dist. LEXIS 9999 …………………….. p. 28 (D. Minn. Mar. 10, 2006)

*United States v. Stover*, 731 F. Supp. 2d 887 (W.D. Mo. 2011) ……………... p. 31, n. 39

*United States v. Stover*, 650 F.3d 1099 (8th Cir. 2011) ……………………… p. 27

26 U.S.C. § 664(b) …………………………………………………………… p. 23

26 U.S.C. § 664(d)(1) ………………………………………………………... p. 21

26 U.S.C. § 1014 …………………………………………………………….... p. 20, n.36

26 U.S.C. § 1015(a) ………………………………………………………….... p. 20 n.36

26 U.S.C. § 1015(c) ………………………………………………..     p. 20 n.36

26 U.S.C. § 7402 ………………………………………………...     pp. 27-28

26 U.S.C. § 7402(a) ………………………………………………..     p. 26

The Government contends that there are no genuine disputes of any of the following material facts (the "SOMF"):

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

*Background*

1.     Schreiner is a Certified Public Accountant licensed in the State of Missouri.[1]

2.     Columbia is a limited liability company that has its principal office location in Columbia, Missouri.  Schreiner founded Columbia and has always been the 100 percent owner of Columbia.[2]

3.     Through Columbia, Schreiner markets himself as a tax return preparer, CPA, and "Certified Tax Coach and Planner."  As of June 2023, through Columbia's website, Schreiner claimed that he "found many court-tested, IRS-approved strategies" that he offers to his customers to purportedly reduce their tax obligations and "stop wasting their money on taxes." Schreiner markets the following services to the public through Columbia or Schreiner's related entity Serenity Tax Salvation LLC: (a) "Certified Tax Strategist"; (b) "Tax Preparation"; (c) "Proactive Tax Reduction Planning"; (d) "Tax Resolution"; (e) "Retirement Planning"; and (f) "Wealth Management").[3]

---

[1] Missouri Division of Professional Registration webpage, attached as <u>Exhibit A</u> to the Declaration of David Mueller, dated January 8, 2024 ("Mueller Dec.").

[2] Deposition of Aric Schreiner, dated October 6, 2023 ("Schreiner Dep.") at 11:1-6, attached to the Declaration of Russell J. Edelstein, dated January 8, 2024 ("Edelstein Dec.") as <u>Exhibit MSJ 1</u>); Missouri Secretary of State webpage (Mueller Dec., <u>Exhibit B</u>).

[3] Columbia Website, pp. 140, 142, attached as <u>Exhibit A</u> to the Declaration of Michael Denault, dated January 8, 2024 ("Denault Dec.").

*The CRAT Strategy*

4.      Through Hoffman Associates LLC ("Hoffman"), Defendant John Eickhoff, Jr.

marketed insurance products along with "exit strategies," also referred to as "wealth preservation

strategies," to potential customers throughout the continental United States who either responded

to advertisements Hoffman placed in the press, or other individuals referred to Hoffman.  For

example, Hoffman placed the following advertisement in a 2014 edition of the Farm Journal:[4]



5.      In December 2013, Schreiner first met Eickhoff.  From their initial meeting,

Schreiner understood that Eickhoff was looking for a CPA who would be willing to prepare

federal tax returns as part of a "Wealth Preservation Strategy" marketed by Hoffman involving

Charitable Remainder Annuity Trusts ("CRATs").[5]

6.      For customers of Hoffman's CRAT "Wealth Preservation Strategy" (the "CRAT

Strategy"), the following steps occurred to sell customer property and purportedly obtain tax

benefits, as claimed in the advertisement in Paragraph 4, above:

---

[4] Deposition of John Eickhoff, Jr., dated November 9, 2023 ("Eickhoff Dep."), at 18:15-18; 19:3-10; 23:5-12; 24:16-19; 25:4-24; 27:9-18; 29:18-30:18; 32:8-33:4; 35:20-36:7; 36:21-37:7 (Edelstein Dec., Exhibit MSJ 2 and Deposition Exhibit 130).

[5] Schreiner Dep., 28:7-18; 59:16-60:11 (Edelstein Dec., Exhibit MSJ 1).

a. An attorney, including attorneys Eickhoff recommended to customers who implemented the CRAT Strategy, established the CRAT.[6]

b. The "AGREEMENT" or "TRUST AGREEMENT" of the CRAT drafted by the customer's attorney designated the customers and, in some instances, his/her spouse as grantors. The "AGREEMENT" or "TRUST AGREEMENT" either named the grantor(s) as a beneficiary/beneficiaries to receive payments from the CRAT, or otherwise included terms directing payments by the CRAT to the grantor(s). The "AGREEMENT" or "TRUST AGREEMENT" also named a trustee, required payment of a portion of the CRAT's funds to a charity, and identified the property to be transferred into the CRAT.[7]

---

[6] Eickhoff Dep., 53:11-55:6 (Edelstein Dec., Exhibit MSJ 2); Deposition of Alan Hook, dated April 27, 2023 ("Hook Dep."), at 15:2-17; 32:15-33:6 (Edelstein Dec., Exhibit MSJ 3); Deposition of Dick Gerhardt, dated June 14, 2023 ("Dick Gerhardt Dep."), at 22:15-21 (Edelstein Dec., Exhibit MSJ 4); Deposition of David Dukes, dated April 28, 2023 ("Dukes Dep."), at 24:24-25:7; 28:2-19 (Edelstein Dec., Exhibit MSJ 5); Deposition of David Moore, dated June 8, 2023 ("Moore Dep."), at 25:12-26:1 (Edelstein Dec., Exhibit MSJ 6 and Deposition Exhibit 105 (HA004169, 79-80)); Deposition of Harvey Mundt, dated May 8, 2023 ("Mundt Dep."), at 42:9-16 (Edelstein Dec., Exhibit MSJ 7); Deposition of Richard Rogers, June 7, 2023 ("Rogers Dep."), at 22:19-23:10; 34:8-17; 45:1-19 (Edelstein Dec., Exhibit MSJ 8).

[7] Deposition of Donald Furrer, dated June 2, 2023 ("Furrer Dep."), at 11:14-15; 12:13-13:22; 16:13-15; 17:17-22; 18:21-19:3 (Edelstein Dec., Exhibit MSJ 9 and Deposition Exhibits 79 (EICKUSA-0087117, 26-28, 39) and 80 (EICKUSA-0006217, 26-28, 39); Deposition of Tim Gerhardt, dated June 2, 2023 ("Tim Gerhardt Dep."), at 48:5-49:2; 50:2-14; 51:2-52:6 (Edelstein Dec., Exhibit MSJ 10 and Deposition Exhibits 89 (HA001041, 59-61, 79) and 90 (HA001139, 57-61, 79); Dick Gerhardt Dep., 16:6-18:8 (Edelstein Dec., Exhibit MSJ 4 and Deposition Exhibit 109 (HA000434, 452-54, 72)); Dukes Dep., 38:12-39:19; 41:7-42:13 (Edelstein Dec., Exhibit MSJ 5 and Deposition Exhibits 17 (HA007570, 80-81, 91) and 18 (HA007691, 702-03, 13); Moore Dep., 12:8-14:4; 15:15-16:14 (Edelstein Dec., Exhibit MSJ 6 and Deposition Exhibit 105 (HA004169, 79-80, 89-90)); Mundt Dep., 44:20-45:23 (Edelstein Dec., Exhibit MSJ 7 and Deposition Exhibit 39 (HA004282, 85-86; 99, 301)); Rogers Dep., 18:7-20 (Edelstein Dec., Exhibit MSJ 8 and Deposition Exhibit 96 (HA009446, 55-56, 66-67); Deposition of Thomas

c. The customer/grantor transferred property to the CRAT, such as real estate and/or commodities, such as crops. The CRAT then sold the property.[8]

d. The CRAT disbursed a portion of the proceeds from the sale of the property to one or more charities selected by the customer.[9]

---

Skattum, dated May 15, 2023 ("Skattum Dep."), at 41:15-42:8; 43:2-5; 64:1-65:4; 66:14-19; 68:9-69:9 (Edelstein Dec., Exhibit MSJ 11 and Deposition Exhibits 53 (HA009985, 88-89, 004-5), 58 (HA010285, 88-89, 304), 62 (HA010624, 27-28, 43)); Beere CRAT (HA006028, 40-42, 52) (Edelstein Dec. Exhibit MSJ 12); Black CRAT (HA006305, 14-16, 24) (Edelstein Dec., Exhibit MSJ 13); Clingan CRAT (HA006756, 65-66, 74) (Edelstein Dec., Exhibit MSJ 14); Diekevers CRAT (HA007294, 97-98, 314) (Edelstein Dec., Exhibit MSJ 15); Freeburg CRAT (HA008193, 96-97, 210) (Edelstein Dec., Exhibit MSJ 16); Alan Gerhardt CRAT (HA008467, 76-77, 86) (Edelstein Dec., Exhibit MSJ 17); Albert Gerhardt CRAT (HA008549, 58-59, 69) (Edelstein Dec., Exhibit MSJ 18); Jack Gerhart CRAT I (HA000804, 20-22, 40) (Edelstein Dec., Exhibit MSJ 19); Jack Gerhardt CRAT II (HA000588, 606-08, 28) (Edelstein Dec., Exhibit MSJ 20); Kasbergen CRAT (HA002293, 96, 316) (Edelstein Dec., Exhibit MSJ 21); Glenn Kleeman CRAT (HA002853, 71-73, 93) (Edelstein Dec., Exhibit MSJ 22); Roger Kleeman CRAT (HA003610, 19-21, 30) (Edelstein Dec., Exhibit MSJ 23); Pruessner CRAT (HA008816, 19-21, 36) (Edelstein Dec., Exhibit MSJ 24); Rindler CRAT (HA004384, 94-95, 404 (Edelstein Dec., Exhibit MSJ 25); Sanders CRAT (HA009838, 40, 42, 57) (Edelstein Dec., Exhibit MSJ 26); Studyvin CRAT (HA004581, 86-87, 612) (Edelstein Dec., Exhibit MSJ 27); Thompson CRAT (HA005202, 12-13, 21-22) (Edelstein Dec., Exhibit MSJ 28); Weubker CRAT (HA005843, 46-47, 60) (Edelstein Dec., Exhibit MSJ 29); Woodruff CRAT (HA008004, 07-08, 24) (Edelstein Dec., Exhibit MSJ 30); Declaration of John Eickhoff, Jr., dated November 2, 2023 (identifying documents retained by Hoffman among its records and produced to the United States during discovery in this action with "HA" Bates number prefixes).

[8] Furrer Dep., 22:22-24; 25:2-26:1; 26:18-27:16 (Edelstein Dec., Exhibit MSJ 9 and Deposition Exhibit 81); Tim Gerhardt Dep., 21:22-23; 42:16-43:10; 44:15-24 (Edelstein Dec., Exhibit MSJ 10 and Deposition Exhibit 87); Dick Gerhardt Dep., 23:5-16; 45:1-46:5 (Edelstein Dec., Exhibit MSJ 4 and Deposition Exhibit 109 (HA000472 (also Bates Numbered EICKUSA-0097876)); Dukes Dep., 39:20-40:15; 42:14-43:13 (Edelstein Dec., Exhibit MSJ 5 and Deposition Exhibits 17 (HA007591) and 18 (HA007713)); Moore Dep., 17:19-18:16 (Edelstein Dec., Exhibit MSJ 6 and Deposition Exhibit 105 (HA004189-90)); Rogers Dep., 28:21-29:6; 40:8-41:11 (Edelstein Dec., Exhibit MSJ 8).

[9] Furrer Dep., 28:24-29:22 (Edelstein Dec., Exhibit MSJ 9 and Deposition Exhibit 81); Dukes Dep., 69:12-70:12 (Edelstein Dec., Exhibit MSJ 5 and Deposition Exhibit 27 (Schreiner_1352)); Mundt Dep., 44:20-45:23 (Edelstein Dec., Exhibit MSJ 7 and Deposition Exhibit 39 (HA004300)); Rogers Dep., 40:8-41:15 (Edelstein Dec., Exhibit MSJ 8); Skattum Dep, 43:14-44:13; 62:15-63:5 (Edelstein Dec., Exhibit MSJ 11 and Deposition Exhibit 53 (HA010004)).

e.  The CRAT used the remaining proceeds from the property sold through the CRAT to purchase a Single Premium Immediate Annuity ("SPIA"). The SPIA paid the customer a set sum over a period of time, effectively transferring the sale proceeds of the property back to the customer.[10]

f.  Eickhoff referred the customer to a tax return preparer. The CRAT hired the tax return prepare to prepare IRS tax forms for the CRAT, such as Forms 5227 ("Split-Interest Trust Information Return"). As described in the 2023 instructions for Form 5227, the form is used to "[r]eport the financial activities of a split-interest trust" and "[p]rovide certain information regarding charitable deductions and distributions of or from a split-interest trust" to the IRS.[11]

*Schreiner/Columbia's Involvement
in the CRAT Strategy*

7.  By 2014, Schreiner agreed to prepare tax returns for CRATs established as part of the CRAT Strategy. Schreiner began receiving fee retainers for those CRATs that year.

---

[10] Furrer Dep., 28:24-29:22 (Edelstein Dec., Exhibit MSJ 9 and Deposition Exhibit 81); Tim Gerhardt Dep., 45:4-46:10 (Edelstein Dec., Exhibit MSJ 10 and Deposition Exhibit 87); Hook Dep., 38:8-39:2 (Edelstein Dec., Exhibit MSJ 3); Dick Gephardt Dep., 48:7-21; 49:16-20 (Edelstein Dec., Exhibit MSJ 4); Dukes Dep., 44:13-20; 51:8-16; 52:9-23; 53:19-54:15 (Edelstein Dec., Exhibit MSJ 5 and Deposition Exhibit 22); Moore Dep., 31:7-32:8; 33:2-4 (Edelstein Dec., Exhibit MSJ 6 and Deposition Exhibit 108 (HA0004113, also Bates numbered EICKUSA-0101571)); Rogers Dep., 40:8-41:11; 53:8-15 (Edelstein Dec., Exhibit MSJ 8); Skattum Dep., 56:6-19; 73:13-16 (Edelstein Dec., Exhibit MSJ 11).

[11] Hook Dep., 32:15-33:9 (Edelstein Dec., Exhibit MSJ 3); Dick Gephardt Dep., 46:11-47:9 (Edelstein Dec., Exhibit MSJ 4); Mundt Dep., 44:15-19 (Edelstein Dec., Exhibit MSJ 7); Rogers Dep., 22:19-23:10; 33:13-34:21; 45:1-19 (Edelstein Dec., Exhibit MSJ 8); Skattum Dep., 31:19-32:10 (Edelstein Dec., Exhibit MSJ 11); Aric Schreiner's Response to the United States' Interrogatory No. 3 and Attachment A (Edelstein Dec., Deposition Exhibit 175); Form 5227 Instructions for 2023 (Mueller Dec., Exhibit C); Forms 5227 (Mueller Dec., Exhibits D-L).

Schreiner identified 54 separate CRATs that hired him to prepare CRAT Strategy tax returns and prepared Forms 5227 for the CRAT Strategy as recently as 2023. CRATs established by Donald and Rita Furrer, Alan and Audrey Gerhardt, Albert and Gladys Gerhardt, Jack and Shelley Gerhardt, as well as Tim and Pamela Gerhardt are among Schreiner's CRAT tax return customers.[12]

8.      Schreiner wrote a memorandum to Eickhoff, dated January 7, 2014, based on research Schreiner conducted that addressed the "Wealth Preservation Strateg[ies]" marketed by Hoffman to the public, including the CRAT Strategy. In a subsequent memorandum, dated January 23, 2014, Schreiner provided an analysis of the CRAT Strategy, wrote that "I now believe and am comfortable with the wealth preservation strategy designed by John Eickhoff and marketed by Hoffman Associates" (p. 1) and further wrote, "[i]n conclusion I endorse the wealth preservation strategy designed by John Eickhoff and marketed by Hoffman Associates" (p. 5).[13] Specific conclusions Schreiner reached in the January 23, 2014 memorandum were consistent with the representations in Hoffman's advertisement that the CRAT Strategy purportedly allows customers to have "CAPITAL GAINS tax legally forgiven," including:

        a.   Use of a SPIA allows CRAT Strategy customers to "avoid capital gains tax on the sale of the appreciated assets." (p. 4)

---

[12] Aric Schreiner's Response to the United States Interrogatory No. 3 and Attachment A (Edelstein Dec., <u>Deposition Exhibit 175</u>); Forms 5227 (Mueller Dec., <u>Exhibits E-L</u>); Amended Complaint, ¶¶ 12-13, 45, 69-74 (Doc. No. 4); Schreiner/Columbia Answer to Amended Complaint, ¶¶ 12-13, 45, 69-74 (Doc. No. 49).

[13] Although the first sentence of the January 23, 2014 memorandum references ILITs (irrevocable life insurance trusts) and IDGTs (intentionally defective grantor trusts), the content of the memorandum addresses CRATs and use of SPIAs with CRATs.

b. "[I]nvestment in a SPIA is all principle and the formation of the CRAT allows the potential capital gain to vanish. Consequently, any future distribution by the SPIA would be treated as any other distribution from an annuity according to an IRS table; part would be ordinary income and part a return of principle; not ordinary gain and capital gain." (p. 1)

c. "Since the funds resulting from the sale of the assets [from the CRAT] would be invested in a SPIA the distributions would be classified as ordinary income and return of principle by the established rules for annuities." (p. 2)[14]

9. By 2016, Schreiner, through Columbia, formalized terms of the services he provided to Hoffman in a Professional Services Agreement Schreiner drafted and executed with John Eickhoff (on behalf of Hoffman). The Professional Services Agreement notes that "preparation of five annual tax returns for each CRAT that is referred to us [*i.e.*, Columbia]" would be billed directly to each customer, but also lists the following services Columbia would provide and bill to Hoffman:

a. "[A]nalyses and spreadsheet comparisons you request of us."

b. "Assistance with marketing and closing a new client, including phone calls, conference calls, emails and faxes."

c. "[R]esearch projects" and "the time to produce written documentation."

---

[14] Schreiner Dep., 59:16-60:11; 61:24-62:11; 75:22-76:6 (Edelstein Dec., Exhibit MSJ 1); Columbia January 7, 2014 Memorandum (Edelstein Dec., Deposition Exhibit 159); Columbia January 23, 2014 Memorandum (Edelstein Dec., Deposition Exhibit 160).

d. "Time spent discussing or presenting the benefits of any of the Hoffman Associate tax savings strategies, especially to attorneys and accountants of prospective clients," including the CRAT Strategy.[15]

10. Between 2014 and 2022, Schreiner through Columbia billed Hoffman over $215,000.00 for services provided in connection with the CRAT Strategy.[16]

11. In addition to preparing multiple years of tax returns as part of the CRAT Strategy, Schreiner provided each service described in Paragraph 9 above in connection with implementing the CRAT Strategy.[17]

12. For example, Schreiner conducted an analysis comparing the potential tax liability for a prospective CRAT Strategy customer, Fred Pruessner.[18] Schreiner analyzed the tax implications for Pruessner if Preussner sold property and paid the resulting capital gains tax compared with three other scenarios, including two options where Pruessner implemented the CRAT Strategy to avoid paying capital gains taxes. Pruessner implemented the CRAT Strategy, selecting a ten-year SPIA payout option.[19]

---

[15] Schreiner Dep., 51:13-52:2; 56:22-25 (Edelstein Dec., Exhibit MSJ 1); Eickhoff Dep., 76:19-77:11; 77:21-78:1 (Edelstein Dec., Exhibit MSJ 2); Professional Services Agreement (Deposition Exhibit 158).

[16] Schreiner's Supplemental Answers to the United States' Interrogatory No. 3 and Attachment B (Edelstein Dec., Deposition Exhibit 176).

[17] Eickhoff Dep., 76:19-84:14; 84:22-85:20 (Edelstein Dec., Exhibit 2); Schreiner Dep., 52:14-55:15 (Edelstein Dec., Exhibit MSJ 1 and Deposition Exhibit 158).

[18] This analysis pre-dates the Professional Services Agreement.

[19] Eickhoff Dep., 133:24-136:5 (Edelstein Dec., Exhibit MSJ 2); Schreiner Dep., 105:7-18 (Edelstein Dec., Exhibit MSJ 1); Aric Schreiner's Response to the United States Interrogatory No. 3 and Attachment A, Customer #1 (Edelstein Dec., Deposition Exhibit 175 and Deposition Exhibit 165).

13.     Schreiner also spoke with multiple other customers who ultimately entered into the CRAT Strategy to address their concerns or vouch for the Strategy, such as:

      a.     Alan Hook, who prior to agreeing to implement the CRAT Strategy through Hoffman, spoke to Schreiner to obtain "validation" of the CRAT Strategy.[20]

      b.     G.G. Verone, who according to an e-mail Schreiner drafted with the subject "Article re CRAT" that Schreiner produced in this litigation, spoke with Schreiner in 2018 about whether the CRAT Strategy involved a pre-arranged sale.  Schreiner "told her it was OK."  Verone implemented the CRAT Strategy.[21]

14.     Similarly, Schreiner communicated with representatives of additional other prospective customers to answer questions and address concerns they had about the purported tax benefits of the CRAT Strategy.  In 2020 for example, Eickhoff attempted to convince a CPA, Neil Katz, and a financial advisor, Mark Keating, of a prospective Hoffman customer, Damon Bunetta, that the CRAT Strategy was legitimate.  In addition to at least one conference call where Katz and Keating challenged the legality of the CRAT Strategy, Schreiner sent Katz an e-mail on March 11, 2020, produced by Schreiner and/or Columbia in this litigation, to address Katz's questions and demands for support for the CRAT Strategy.  In his e-mail to Katz, Schreiner argued:

---

[20] Hook Dep., 12:4-14:18; 16:22-19:1 (Edelstein Dec., <u>Exhibit MSJ 3</u>).

[21] Eickhoff Dep., 155:1-156:19 (Edelstein Dec., <u>Exhibit MSJ 2</u> and <u>Deposition Exhibit 172</u>); Aric Schreiner's Response to the United States Interrogatory No. 3 and Attachment A, Customer #30 (Edelstein Dec., <u>Deposition Exhibit 175</u>).

a. That by entering into the CRAT Strategy, there is "No Capital Gains Tax Paid on Asset Conversion/Sale of Assets," "[t]he entire amount of money (or FMV of other assets) changes character and avoids capital gains tax." (p. 2.)

b. "The donor avoids capital gains taxes by design." (p. 2.)

c. "[A]ll capital gains are avoided, and the full amount of the original contribution are converted to principle in the CRAT." (p. 2.)

d. By purchasing a SPIA, there is a "non-taxable portion of each payment [] that represents the return of principal over the life of the contract." (p. 2.)

e. "The CRAT was designed to encourage charitable giving by allowing the donor to avoid capital gains taxes." (p. 3.)

f. "Congress was well aware that when they authorized the CRAT, that the US Treasury would receive less money each year because of reduced capital gains taxes (from the forgiveness of capital gains tax on appreciated assets donated to the CRAT)... ." (p. 4.)

In the same e-mail, Schreiner responded to specific questions posed by Katz, including:

g. "Q1. If the trust owns the annuity and you are the beneficiary why isn't the receipt of the benefits taxable to you?" In response, Schreiner wrote that rules governing "regular trusts" do not apply to CRATs, "[i]n nonprofit (charity) accounting, noncash assets are recorded at FMV," and because charities record donated assets at Fair Market Value in their internal records, if Katz's client implemented the CRAT Strategy, "[t]here would be no gain or loss" and "no capital gain to report." Schreiner also

wrote that as part of the CRAT Strategy, 26 U.S.C. § 72(u) governs how

distributions from the SPIA are taxed ("ordinary income and return of

principal"), rather than 26 U.S.C. § 664. (pp. 4-5.)

h. "Q3. But the trust is buying it and Damon or whoever is getting the

distributions. Damon has no basis in them. So, why isn't it income?" In

response, Schreiner wrote "I think my previous comments have answered

this question" and that "I am willing to arrange a time to talk to you on

Friday (3/13)." (pp. 4-5.)

Katz believed he never received from Schreiner adequate support for the CRAT Strategy.

Keating advised Bunetta not to implement the Strategy because "what we thought they were

suggesting was incorrect and bogus, and [Bunetta] could get in trouble later for tax evasion."[22]

15. Schreiner also drafted additional memoranda analyzing, justifying, and endorsing

the CRAT Strategy that he provided to others who assisted Hoffman in promoting and

implementing the CRAT Strategy. In July 2015 for example, Schreiner sent Defendant John

Gray a memorandum titled "CRAT PRESENTATION FOR CPAs & ATTORNEYS" on

Columbia's letterhead that states:

a. "Some CPAs and attorneys can't believe that the capital gains that result

from the sale of the highly appreciated contributed assets don't retain their

character in the trust," and "[t]he main benefit of the CRAT is that the

---

[22] Deposition of Willow Creek Wealth Management, dated May 31, 2023, at 9:5-8; 10:7-10; 15:17-18; 17:18-25; 21:4-22:2; 29:1-36:13; 37:22-38:21; 71:8-72:7 (Edelstein Dec., Exhibit MSJ 31); Deposition of Neil Katz, dated May 31, 2023; at 8:21-9:18; 16:9-11; 17:10-20; 29:17-31:12 (Edelstein Dec., Exhibit MSJ 32); Emails (Edelstein Dec., Deposition Exhibits 67, 69, 77) (highlighting added by undersigned counsel for this Motion).

capital gain vanishes because the CRAT is tax-exempt by definition."  (p. 4.)

b.  "[A]ll of the funds used to purchase a SPIA are principle."  (p. 5.)

c.  "Every year (until the principle is recovered), part of the distribution to the beneficiary is non-taxable return of corpus."  (p. 5.)

d.  "This strategy is a legal way to avoid capital gains taxes on appreciated assets that Congress provided decades ago."  (p. 5.)

In his e-mail to Gray, Schreiner wrote that "[h]ere are two primer memos I previously prepared at John Eickhoff's request.  I have sent them and the related support in pdf format to a few CPAs and attorneys at John's direction."  Schreiner also wrote: "I hope they help you with the CPA you are working with."[23]

*Schreiner/Columbia's Role Defending*
*the CRAT Strategy Before the IRS*

16.     Schreiner has represented, for compensation, participants in the CRAT Strategy before the IRS during audits of tax returns resulting from the CRAT Strategy.[24]

17.     As power of attorney during IRS audits of tax returns reflecting the CRAT Strategy, Schreiner submitted memoranda to the IRS justifying the CRAT Strategy.  Examples include memoranda to IRS Revenue Agent Beth Munn, dated April 30, 2018, and to IRS

---

[23] Edelstein Dec., ¶ 37(ff) and Deposition Exhibit 166 (and one of its attachments, Deposition Exhibit 119).

[24] Amended Complaint, ¶ 86 (Doc. No. 4); Schreiner/Columbia Answer to Amended Complaint, ¶ 86 (Doc. No. 49.); Schreiner Dep., 25:6-17; 27:18-23 (Edelstein Dec., Exhibit MSJ 1 and Deposition Exhibit 157); Schreiner's Supplemental Answers to the United States' Interrogatory No. 3 and Attachment B (Edelstein Dec., Deposition Exhibit 176).

Revenue Agent John Leahy, dated July 16, 2018. Schreiner's April 2018 memorandum argues that the CRAT Strategy:

  a. Allows "[n]o Tax Paid on Asset Conversion/Sale of Assets" and "[a]ll the funds from the sale of the asset change character and escape tax." (p. 4.)

  b. "[A]voids the requirements of Section 664(b) by investing in a vehicle that has its own set of rules: a single premium immediate annuity (SPIA)." (p. 11.)

  c. "Follow[s] the IRS Code Section 72, regarding the taxability of annuities, specifically SPIAs," and applying the CRAT Strategy to that statute, "effectively characterizes the vast majority of distributions to the recipient as nontaxable return of principal and [the] remaining amount as ordinary income." (p. 16.)

  d. Is governed by the "IRC Section 72(b)(1) and (2) Exclusion ratio," which states that "[g]ross income does not include that part of any amount received as an annuity under an annuity … which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contact (as of such date). [The 'investment in the contract' is also known as the principal.']" (p. 14.)

The July 18, 2018 memorandum includes these same arguments using identical language on pages 4, 11, 14, and 16.[25]

---

[25] Schreiner Dep., 165:25-167:2; 170:17-171:2 (Edelstein Dec., <u>Exhibit MSJ 1</u> and <u>Deposition Exhibits 177</u>, <u>178</u>).

18.     Schreiner provided at least one copy of his memoranda to the IRS arguing in favor of the CRAT Strategy to Defendant Damon Eisma.  Eisma, who Schreiner taught how to prepare Forms 5227 to implement the CRAT Strategy, also served as a power of attorney in multiple IRS audits arising from the CRAT Strategy.  Eisma modified the fact sections of the memoranda to comport with his clients' facts, made no changes to the arguments Schreiner drafted in favor of the CRAT Strategy, and then forwarded them to the IRS.[26]

*Schreiner/Columbia's Notice that the CRAT Strategy*
*is Illegal and Their Recent Conduct*

19.     As early as 2018, as a power of attorney for the Donald and Rita Furrer Charitable Remainder Annuity Trust, Schreiner received notice from the IRS that the IRS disallowed the capital gains tax benefits claimed on tax returns implementing the CRAT Strategy.[27]

20.     On May 1, 2019, employees of the IRS met with Schreiner and his attorney and informed Schreiner of the IRS position that the tax benefits claimed under the CRAT Strategy were unsupported because: (a) the basis of property transferred to the CRAT is the same for the CRAT as it is in the hands of the grantor under 26 U.S.C. § 1015; (b) 26 U.S.C. § 664(b) defines the taxable treatment of distributions from a CRAT, not 26 U.S.C. § 72; (c) the exclusion ratio provisions of 26 U.S.C. § 72 do not apply to the CRAT Strategy; (d) the purchase of a SPIA with proceeds from the sale of property by a CRAT does not convert or recharacterize gain or income from the sale of the asset into principal or corpus; and (e) the IRS Forms 5227 and related

---

[26]  Schreiner Dep., 152:4-22 (Edelstein Dec., Exhibit MSJ 1); Deposition of Damon Eisma, dated September 25, 2023, at 36:3-8; 48:1-53:7 (Edelstein Dec., Exhibit MSJ 33 and Deposition Exhibits 147, 148, and 149).

[27] Schreiner Response to IRS Notice, excluding attachments to Schreiner's January 4, 2019 memorandum and including an IRS Form 886-A (Mueller Dec., ¶ 15 and Exhibit M).

individual income tax returns of CRAT customers understate tax liability of CRAT customers by implementing the CRAT Strategy.[28]

21.      On September 28, 2022, the United States Tax Court issued its decision in *Furrer v. Comm'r*, which upheld over $200,000.00 of tax deficiencies the IRS assessed against CRAT Strategy customers Donald and Rita Furrer for tax years 2015-2017.  Schreiner prepared CRAT Strategy tax returns for the Furrers.[29]

22.      As recently as March 2023, Schreiner continued to prepare IRS Forms 5227 for CRATs claiming the purported capital gains tax benefits under the CRAT Strategy.[30]

23.      On April 20, 2023, the United States Tax Court issued its decision in *Gerhardt v. Comm'r*, which upheld over $900,000.00 of income tax deficiencies that the IRS determined were due against CRAT Strategy customers Gladys Gerhardt, Alan Gerhardt, Audrey Gerhardt, Jack Gerhardt, Shelley Gerhardt, Tim Gerhardt, and Pamela Gerhardt for tax years 2016-2017. Schreiner prepared CRAT Strategy tax returns for the Gerhardts.[31]

24.      As recently as July 2023, Schreiner sent memoranda to the IRS for CRAT Strategy customers under audit by the IRS asserting the same or similar arguments he has made since 2014.  For example, in a July 7, 2023 memorandum with the subject "CRAT Compliance

---

[28] IRS Memorandum of Interview, p. 16 of 18 (Mueller Dec., Exhibit N).

[29] *Furrer v. Comm'r* , 2022 Tax. Ct. Memo LEXIS 102, **6, 20 (Sept. 28, 2022) (Edelstein Dec., Exhibit 34); Aric Schreiner's Response to the United States Interrogatory No. 3 and Attachment A, #2, 8 (Edelstein Dec., Deposition Exhibit 175).

[30] Forms 5227, (Mueller Dec., Exhibits E-L).

[31] *Gerhardt v. Comm'r* , 2023 U.S. Tax Ct. LEXIS 1956, *7, 10, 16, 21, 39-40 (April 20, 2023) (Edelstein Dec., Exhibit MSJ 35); Aric Schreiner's Response to the United States Interrogatory No. 3 and Attachment A, #9-10, 11-13, 17-18 (Edelstein Dec., Deposition Exhibit 175).

with IRC Section 664 Explained," in addition to noting that "[s]ince 2014, I have prepared hundreds of CRAT tax returns (Forms 5227)" (p. 11 of 14), Schreiner asserted:

      a.   That CRAT Strategy customers had no capital gain tax to report from SPIA distributions because "[t]here was no capital gain or nontaxable income to report. The balance of the distribution, by definition, was corpus." (p. 10.)

      b.   By transferring property to a CRAT, "[t]he full value of the donated asset is converted to cash and recorded on the books of the CRAT as corpus." (p. 4.)

      c.   Use of a SPIA allows a CRAT Strategy customer to obtain distributions from the SPIA that are "characterized as a return of principal." (p. 3.)

The attached support with the Schreiner's July 7, 2023 memorandum comprises: Schreiner Exhibits 1, 6, 10, 13-14 (websites from financial companies about CRATs, including companies selling CRATs); Schreiner Exhibits 2, 16-21 (IRS Notices, public letter rulings, and a Treasury Regulation); Schreiner Exhibit 3 (Bloomberg material addressing CRATs); Schreiner Exhibits 4, 8-9, 11-12, 15 (commentary by members of the public about CRATs), Schreiner Exhibit 5 (a webpage captured in 2019 from a law firm that is no longer available online about CRATs); and Schreiner Exhibit 7 (a webpage from Stanford University identifying CRATs as a method to donate to the university).[32]

     25.    On October 6, 2023, at his deposition in this action, when asked the effect of 26 U.S.C. § 1015 ("Basis of property acquired by gifts and transfers in trust") on the CRAT

---

[32] July 7, 2023 Memo to Craig LaVoy (Mueller Dec., ¶ 18 and Exhibit O and Exhibit P).

Strategy, Schreiner responded that it "deals with traditional trusts. It does not specifically say charitable remainder trust."[33]

26. As of January 8, 2024, Schreiner, through Columbia, continues to advise others through Columbia's website that the CRAT Strategy is a valid method to avoid paying taxes. Specifically, the Columbia website includes a posting authored by Schreiner titled "Tame Your Taxes: 7, Fundamentals of Tax Planning," which reads, in part, that "CRTs" (which include CRATs) allow for "no capital gains on the sale" of "appreciated property" contributed to them. (p. 028.) Another posting authored by Schreiner, titled "Tax-Free Income (Part 1)" lists "Charitable Remainder Trusts" as a "common type[] of tax-free income." (p. 116.) In the same posting, Schreiner claims that:

> As a charitable entity the CRT records the asset [transferred to it] at fair market value and later sells the asset. The potential tax on the long-term capital gain disappears. The funds received from the sale of the asset are invested by the trustee of the CRT and those earnings are reported to the recipient (usually the grantor) who pays tax on the earnings. But, the capital gains tax on the appreciation of the donated asset has been avoided completely. This sounds like tax-free income to me.

(p. 117.) Schreiner uses these postings on Columbia's website, at least in part, to obtain new customers.[34]

---

[33] Schreiner Dep., 232:4-18 (Edelstein Dec., Exhibit MSJ 1).

[34] Schreiner Dep., 19:15-20:16 (Edelstein Dec., Exhibit MSJ 1); Columbia Website, pp. 28, 116-18, (Denault Dec., ¶¶ 3-4 and Exhibit A).

## ARGUMENT

As held by the U.S. Tax Court, the CRAT Strategy's "gain disappearing act … is worthy of a Penn and Teller magic show. But it finds no support in the Code, regulations, or caselaw." *Gerhardt v. Comm'r*, 2023 U.S. Tax Ct. LEXIS 1956, *27 (Tax Ct. Apr. 20, 2023) (finding against the Gerhardts, who challenged IRS deficiencies from their implementation of the CRAT Strategy through CRAT tax returns prepared by Schreiner); (SOMF, ¶ 7). A second Tax Court judge reached the same conclusion when Donald and Rita Furrer challenged their IRS tax deficiencies from participation in the CRAT Strategy. *See Furrer v. Comm'r*, 2022 Tax. Ct. Memo LEXIS 102, **17 (Tax Ct. Sept. 28, 2022) ("In essence, petitioners contend that all distributions from a CRAT constitute nontaxable returns of corpus, because Congress supposedly intended that '[t]he donor's beneficiaries and the charity benefit rather than the Service.' Petitioners cite no legal authority to support their position, and there is none."); (SOMF, ¶ 7 (identifying the Furrer's CRATs among Schreiner's CRAT tax returns). At summary judgment, this Court should reach the same conclusion and reject Schreiner's claims that the CRAT Strategy allows capital gains tax liability to "vanish" from CRAT distributions. (SOMF, ¶¶ 8(b), 15(a).)

Longstanding case law, unambiguous statutes, and undisputed facts are fatal to the central arguments Schreiner asserts in support of the CRAT Strategy. As addressed below: (1) 26 U.S.C. § 1015, governing tax basis for property transferred to trusts, precludes the benefits Schreiner repeatedly claims are available; and (2) contrary to Schreiner's claims, single premium immediate annuities ("SPIAs") cannot serve as a mechanism to "avoid[] the requirements of Section 664(b) by investing in a vehicle that has its own set of rules." (SOMF, ¶ 17(b).) Despite clear law, IRS's warnings to Schreiner since 2018, and the absence of mandatory or even

persuasive authority to support his position, Schreiner continues to repeat baseless arguments as recently as 2024 in defense of the CRAT Strategy. (*Id.*, ¶¶ 24-26.)

For these reasons, and as addressed below, the Court should grant the United States partial summary judgment under Court III of the Amended Complaint (26 U.S.C. § 7402) and enter an injunction with terms detailed below, including a permanent bar against Schreiner and Columbia from, *inter alia*: (1) preparing tax returns that report the improper tax benefits they claim are available from use of CRATs; and (2) providing false tax advice for compensation, or promise of compensation, involving CRATs. At trial, the United States intends to offer additional facts, including disputed facts, to obtain a broader injunction against Schreiner and Columbia under Counts I-III to further restrict their tax business and for disgorgement of their ill-gotten gains under Count IV.

**I.     26 U.S.C. § 1015 Precludes Schreiner's Claims that Transferring Property to a CRAT Transforms it to Allow Capital Gains Taxes to "Vanish."**

From his initial involvement in the CRAT Strategy in 2014 to as recently as 2023, others have engaged Schreiner to argue (and prepare corresponding tax returns) that the CRAT Strategy purportedly allows capital gains tax liability to "vanish" from distributions that CRAT Strategy customers receive from the sale of customer property by their CRATs.[35] (SOMF, ¶¶ 8(b), 15(a).) CRAT Strategy customers would be subject to capital gains taxes if they sold their property directly to a third party, but according to Schreiner, transferring property and selling it through a CRAT allows the sale proceeds to transform or "change character" to trust "corpus" or "principal." (*Id.* at ¶¶ 8(b)-(c), 14(a), 14(c)-(d), 15(a)-(c), 17(a), 17(c), 24(a)-(c).)

---

[35] Similarly, Schreiner has claimed the CRAT Strategy allows the "forgiveness" of capital gains taxes, for capital gains tax to "disappear[]," or for customers to "escape" or "avoid" capital gains taxes. (SOMF, ¶¶ 8(a), 14(a)-(c), 14(e)-(f), 15(d), 17(a), 26.)

Looking for authority to support this position (*i.e.*, that "[t]he entire amount of money (or FMV of other assets) changes character and avoids capital gains tax"), the Tax Court in *Furrer* concluded that "there is none." (SOMF, ¶ 14(a)); *Furrer*, 2022 Tax. Ct. Memo LEXIS 102 at ** 17. Decades of statutory and case law contradict Schreiner's claims that once placed in the CRAT, the cost basis the grantor has in the property is effectively stepped-up from the customer's actual costs in the property (*e.g.*, the cost of purchasing the property and costs incurred after purchase), to fair market value of the appreciated property. *Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at *27; *Furrer*, 2022 Tax. Ct. Memo LEXIS 102 at **14.

The rule that trusts acquire the grantor's basis in property transferred to it has "been established for a very long time."[36] *Furrer*, 2022 Tax. Ct. Memo LEXIS 102 at **14 (citing *Veterans Found. v. Comm'r*, 38 T.C. 66, 72 (1962), *aff'd* 317 F.2d 456 (10th Cir. 1963) and *Magness v. Comm'r*, T.C. Memo. 1965-260 (1965)). Similarly, case law applying this rule to individuals who promote or implement tax avoidance schemes like the CRAT Strategy is also longstanding precedent predating Schreiner's involvement in the CRAT Strategy. *See, e.g., United States v. Estate Preservation Servs.*, 202 F.3d 1093, 1099, 1106 (9th Cir. 2000) (affirming injunction against tax shelter promoters, including scheme to transfer equipment into trusts to falsely claim higher basis in the equipment than it had in the hands of the grantor); *see also United States v. Scott*, 37 F.3d 1564, 1569, 1584 (10th Cir. 1994) (affirming criminal convictions for promotion and sale of a scheme involving fraudulent tax depreciation claims by use of trusts to claim bogus stepped-up basis and holding "[t]ransfers of assets to a trust that the

---

[36] Exceptions that do not apply to CRAT Strategy customers for purposes of this Motion include basis as fair market value when the donor's basis is "greater than the fair market value of the property at the time of gift," transfers to trusts before 1921, and basis upon transfers at death. 26 U.S.C. §§ 1014, 1015(a); 1015(c).

purchaser controls would have a carryover tax basis, I.R.C. 1015; thus, there would be no write-up of the basis for tax depreciation").

Schreiner is well-aware of I.R.C. Section 1015. At his deposition in this action, Schreiner testified that he believes Section 1015 does not apply to the CRAT Strategy because the statute "deals with traditional trusts. It does not specifically say charitable remainder trusts." (SOMF, ¶ 25.) Similarly, in 2020, Schreiner asserted to Neil Katz, a CPA and member of a team of financial professionals who advised their client not to implement the CRAT Strategy, that rules governing "regular trusts" do not apply to CRATs and "[i]n nonprofit (charity) accounting, noncash assets are recorded at FMV." (*Id*. at ¶¶ 14, 14(g).) Columbia's website maintains the same position as of the date of this Motion (*i.e.,* January 8, 2024), claiming that CRATs, as Charitable Remainder Trusts ("CRTs"), are "a charitable entity" that "records the asset [transferred to it] at fair market value." (*Id*., ¶ 26.)

Schreiner's position stretches credulity. First, CRATs are trusts (albeit a form of trust), and like any trust, are subject to Section 1015 because: (1) there is no law exempting CRATs from Section 1015; (2) 26 U.S.C. § 664(d)(1) expressly defines CRATs as a form of trust; and (3) CRAT Strategy trusts are governed by "TRUST AGREEMENTS" with named grantors and trustees. (SOMF, ¶ 6(b)); 26 U.S.C. § 664(d)(1); *see also Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at *29 (describing the argument that Section 1015 "does not mention" CRATs as "meritless" and noting that "[n]othing in the text of [Section 1015] excludes CRATs from its scope").[37] Second, whether charitable organizations record fair market value basis for donated assets on their internal records has no bearing on whether CRATs, which are not charities, can

---

[37] Schreiner's position, essentially that statutes must list every subvariant of property and actions they cover to have any effect, would also render absurd results, whether applied to a tax statute or any other civil or criminal statute.

"avoid capital gains tax on the sale of the appreciated assets" by making capital gains tax liability "vanish" on tax returns Schreiner prepares.  (SOMF, ¶¶ 8(a)-(b), 14(g), 15(d), 26.)  Absent pretending that 26 U.S.C. § 1015 does not apply to CRATs and treating CRATs as charitable organizations, which they are not, the CRAT Strategy fails.

## II.     Use of a SPIA Does Not Avoid the Ordering Rules of 26 U.S.C. § 664 to Eliminate Capital Gains Taxes on CRAT Distributions.

After the CRAT Strategy customer transfers property to the CRAT, the second stage of the CRAT Strategy "magic show" takes place through purchase by the CRAT of a SPIA. *Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at *27.  According to Schreiner, the purchase of a SPIA by the CRAT allows CRAT Strategy customers to "avoid capital gains taxes" on distributions they receive from the CRAT because:  (1) "all of the funds used to purchase a SPIA are principle"; (2) "the distributions [originating from the SPIA back to the customers] would be classified as ordinary income and return of principle" under 26 U.S.C. § 72 governing annuities; and (3) as a result, the CRAT Strategy customer "avoids the requirements of Section 664(b) by investing in a vehicle that has its own set of rules."  (SOMF, ¶¶ 8(a)-(c), 14(d), 15(b), 17(b)-(c).)  As addressed above (*supra*, pp. 19-22), Schreiner's claim that "the of funds used to purchase a SPIA are principle" or "corpus" is unfounded.  Nor does use of a SPIA otherwise save the CRAT Strategy as a matter of law.

The statute providing for CRATs and governing their tax treatment, 26 U.S.C. § 664, provides the following ordering rules for taxation of distributions from the CRAT to beneficiaries:

(1) First, as amounts of income (other than gains, and amounts treated as gains, from the sale or other disposition of capital assets) includible in gross income to the extent of such income of the trust for the year and such undistributed income of the trust for prior years;

(2) Second, as a capital gain to the extent of the capital gain of the trust for the year and the undistributed capital gain of the trust for prior years;

(3) Third, as other income to the extent of such income of the trust for the year and such undistributed income of the trust for prior years; and

(4) Fourth, as a distribution of trust corpus.

26 U.S.C. § 664(b); *see also Miller v. C.I.R.*, 2009 Tax Ct. Memo LEXIS 183, *7 (Tax Ct. Aug. 10, 2009) ("The four-tier system causes a beneficiary to treat distributions from a charitable remainder annuity trust as being pulled first from sources with the highest income tax rate."). Therefore, distributions qualify as a return of trust corpus only after distribution of all of the trust's ordinary income, capital gains, and other income.

Realizing that Section 664 poses problems and to "avoid[] the requirements of Section 664(b)" for recipients of CRAT distributions to pay capital gains taxes, Schreiner relies on 26 U.S.C. § 72 ("Annuities; certain proceeds of endowment and life insurance contracts") as providing "its own set of rules." (SOMF, ¶ 17(b).) Schreiner is correct that Section 72 "has its own set of rules," but fails to inform others that those rules do not apply to the CRAT Strategy. First, as the Court in *Furrer* observed, Section 72 cannot "avoid" Section 664's taxation ordering rules because Section 72(a)(1) expressly states that Section 72 applies "'[e]xcept as otherwise provided in this chapter.'" *Furrer*, 2022 Tax. Ct. Memo LEXIS 102 at **19 (quoting 26 U.S.C. § 72(a)(1)). Therefore, "to the extent sections 72 and 664 call[] for different treatment, section 664 would control." *Id*. Second, while Schreiner claims that CRAT Strategy participants can avoid capital gains taxes because Section 72 provides for an exclusion from gross income of a purchaser's investment in an annuity: (1) again, Section 664 controls; and (2) "[n]either CRAT [customers] nor the CRATs had any investment in the annuity contracts … because [the SPIAs] were purchased with proceeds from the sale of [property] that had a basis of zero." (SOMF, ¶

17(d)); *Furrer*, 2022 Tax. Ct. Memo LEXIS 102 at \*\*19-20 (citing 26 U.S.C. § 72(c)(1)). In sum, Section 72 cannot save the CRAT Strategy as a matter of law.

### III.     Schreiner's Claims as to the Benefits of CRATs Far Exceed Their Legitimate Tax Benefits and Rely on Scant Support or a Misreading of his Purported Authority.

Schreiner promotes the CRAT Strategy and prepares corresponding tax returns for CRATs claiming benefits that far exceed those permitted by law, as addressed above. A CRAT is tax-exempt, therefore, there is no ordinary income or capital gains tax due at the time of the sale of property by the CRAT, but the same is not true for CRAT Strategy customers when they receive proceeds of the sale through distributions by the CRAT. *See Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at \*22-23. As the Court in *Gerhardt* noted, some commentary about the tax benefits of CRATs states that "[a]ppreciated assets held by an individual can be disposed of on a tax-free basis," but "as the same commentators recognize, that is not quite right." *Id*. at \*23, n. 30 (citation omitted). Rather, the valid benefit to individuals who establish a CRAT is to "defer[] the payment of [taxes]" as the customer receives distributions over time, as opposed to the customer selling the property directly to a third party and realizing a capital gains tax liability all at once. *Id*. (citation omitted).

The support Schreiner relies upon to falsely promise benefits from CRATs that far exceed deferral of capital gains taxes largely consists of public commentary. Even presuming that public commentary is controlling authority, which it is not, as recently as July 2023, Schreiner has misrepresented the content of that commentary to the IRS. Specifically, Schreiner attached Exhibits 1, 4-15 to a July 7, 2023 memorandum he sent to the IRS defending the CRAT Strategy. (SOMF, ¶ 24.) Most of these exhibits comprise articles, internet blogs, or promotional material by companies selling CRATs that broadly comment that CRATs avoid capital gains taxes. (*Id*.) With the exception of a print-out of a law firm's webpage from 2019 that is no

longer available online, these sources never suggest that distributions from a CRAT avoid capital gains taxes. (*Id.*) None claim that: (1) the basis rules of Section 1015 do not apply to CRATs; or (2) use of SPIAs avoids the ordering rules of Section 664 governing CRATs. (*Id.*)

Similarly, besides commentary attached to Schreiner's July 2023 memorandum to the IRS, none of the IRS publications and federal regulations Schreiner sent to the IRS (Schreiner Exhibits 2, 16-21) support his CRAT Strategy arguments or otherwise address aspects of CRATs that are factually or legally at-issue in this action. (*Id.*) Finally, several sources Schreiner submitted to the IRS contradict his position. For example, in Schreiner Exhibit 8, he highlights that "[a] charitable remainder trust is not subject to any income tax," but fails to highlight the portion that reads "[a]s assets are distributed from the charitable remainder trust, you would be taxed on those distributions in accordance with a tier system of income tax." (*Id.*) (EICKUSA1023-000055).) Likewise, the Bloomberg material Schreiner submitted (Schreiner Exhibit 3) undermines his claims, such as his incomplete highlight of one sentence, which reads in full: "[t]he funding of a charitable remainder trust with appreciated property will not result in a capital gain to the grantor *unless [] the grantor receives property in exchange* …" (*e.g.*, distributions from the annuity). (*Id.*) (EICKUSA1023-000025) (portion Schreiner did not highlight in italics).)

Schreiner must understand that the commentary attached to his July 2023 memorandum fails to support his view that CRATs allow for eliminating capital gains tax liability from CRAT distributions, not simply to defer payment of those taxes, because he submitted that commentary to the IRS ***three months after*** the *Gerhardt* Court warned against the hazards of misreading commentary about CRATs. Nonetheless, Schreiner continues with his "gain disappearing act …

worthy of a Penn and Teller magic show." *Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at *27 (2023).

## IV.     An Injunction Under Section 7402 is Necessary and Appropriate to Enjoin Schreiner and Columbia.

Section 7402 of Title 26 of the U.S. Code provides this Court authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws … in addition to and not exclusive of any and all other remedies of the United States." 26 U.S.C. § 7402(a) *see also United States v. ITS Fin., LLC*, 592 Fed. Appx. 387, 394-97 (6th Cir. 2014) (reviewing case law addressing the "expansive scope" of Section 7402 and holding that "[t]he plain text of § 7402 provides a broad grant of authority to enter injunctions," independent of other statutory provisions providing for injunctive relief, "even where there was no violation of the internal revenue laws") (citations omitted). An injunction under Section 7402 is "necessary or appropriate for the enforcement of the internal revenue laws" to permanently bar Schreiner and Columbia from, *inter alia*: (1) continuing to provide false tax advice regarding the CRAT Strategy for compensation or promise of compensation; and (2) preparing corresponding tax returns that implement the illegal benefits claimed under the CRAT Strategy. *See, e.g., United States v. Hansen*, 2006 U.S. Dist. LEXIS 54496, *2, 36-38 (S.D. Cal. Jun. 1, 2006) (issuing an injunction at summary judgment against a promoter of tax-fraud schemes, including under Section 7402).

When injunctive relief is not specifically authorized by statute, courts balance the following factors when determining whether to issue an injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest." *Forest Park II v. Hadley*, 336 F.3d 724, 731 (8th Cir. 2023)

(citing *Bank One, N.A. v. Guttau*, 190 F.3d 844, 847 (1999)). However, when injunctive relief is expressly authorized by statute, as in this action, the court is not required to address these factors. *See United States v. Stover*, 650 F.3d 1099, 1102, 1106, 1114 (8th Cir. 2011) (affirming injunction against promoter of fraudulent tax schemes and citing *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985); *United States v. Landsberger*, 692 F.2d 510, 503-04 (8th Cir. 1982)); *see also United States v. Harrington*, 2019 U.S. Dist. LEXIS 62858, *12-13 (E.D. Mo. Feb. 4, 2019) ("With respect to relief sought under §§ 7402, 7407, 7408, the Court is not required to consider the traditional equitable factors applied in non-statutory injunctive relief cases … because the injunctive relief requested is expressly authorized by statute.") (citations omitted). Under Section 7402, which "sets forth the specific criteria for injunctive relief," the United States "'need only meet those statutory criteria, without reference to traditional equitable factors, for this Court to issue an injunction.'" *United States v. Hall*, 2013 U.S. Dist. LEXIS 183838, *17 (W.D. Mo. Sept. 25, 2013) (entering injunction against a tax return preparer under 26 U.S.C. §§ 7402, 7407, and 7408) (quotation and citation omitted); 26 U.S.C. § 7402.

Pursuant to 26 U.S.C. § 7402, the permanent injunction the United States seeks in this Motion is "necessary or appropriate for the enforcement of the internal revenue laws," in part, for a simple reason – the CRAT Strategy is illegal. And while assessing harm to a defendant is not required for statutory injunctive relief under Section 7402, it is worth noting that enjoining Schreiner and Columbia at summary judgment from continued violations of the law poses no harm to them. *See Hadley*, 336 F.3d at 731; *United States v. Preiss*, 2008 U.S. Dist. LEXIS 46000, * 27 (M.D.N.C. Jun. 11, 2008) (finding no harm from a tax preparer injunction that "requires [defendant] to abide by the internal revenue laws") (citations omitted); *Hansen*, 2006 U.S. Dist. LEXIS 54496 at *32 (concluding that "Defendant will not sustain any irreparable

harm by being required to obey the law"); *United States v. Sonibare*, 2006 U.S. Dist. LEXIS 9999, *10 (D. Minn. Mar. 10, 2006) (holding that an order ending "current illegal activity … cannot be deemed harmful" to a tax return preparer and his corporation).

Moreover, any injunction that is "necessary or appropriate for the enforcement of the internal revenue laws" is in the "public interest."  *See Hadley*, 336 F.3d at 731; *Preiss*, 2008 U.S. Dist. LEXIS 46000, *27-28 ("[t]he public has a compelling interest in the fair administration and enforcement of the internal revenue laws" and an injunction "would serve the public interest by preventing [Defendant] from participating in a similar tax scheme in the future"); *see also Hall*, 2013 U.S. Dist. LEXIS 183838 at *27 (noting that preventing future interference with the administration of the tax laws warranted a Section 7402 injunction); *Hansen*, 2006 U.S. Dist. LEXIS 54496 at *32 (under its analysis whether to issue a Section 7402 injunction, concluding that "the public interest in prohibiting the Defendant from selling illegal and invalid tax avoidance programs is great").  That public interest includes preventing tax harm, which as held in *Furrer* and *Gerhardt*, exceeds $1 million from just 8 of the 54 CRATs that Schreiner identified as income sources from the CRAT Strategy among the "hundreds" of CRAT Strategy tax returns he has prepared.  (SOMF, ¶¶ 21, 23-24); *see also Hall*, 2013 U.S. Dist. LEXIS 183838 at *27 (when considering whether to enter an injunction under Section 7402, noting the expenditure of Government resources needed to identify harm caused by defendant, as well as the harm to customers from tax deficiencies).

Finally, since at least 2018, Schreiner has had notice that the CRAT Strategy is illegal. (SOMF, ¶¶ 19-21, 23.)  An injunction under Section 7402 is "necessary or appropriate for the enforcement of the internal revenue laws" because, despite that notice, Schreiner opted to continue to profit by asserting the same meritless arguments he advocated since 2014 and

prepare tax returns implementing the CRAT Strategy.  (*Id.*, ¶¶ 16, 22, 24.)  And even after the U.S. Tax Court summarized the CRAT Strategy as a "gain disappearing act … worthy of a Penn and Teller magic show" with "no support in the Code, regulations, or caselaw," Schreiner has continued to defend the CRAT Strategy to the IRS on behalf of his customers and assert claims specifically rejected by the courts. (SOMF, ¶¶ 24-26); *Gerhardt*, 2023 U.S. Tax Ct. LEXIS 1956 at *27.  In sum, Schreiner's extensive role on the CRAT Strategy since 2014 and his ongoing and complete refusal to accept the law to this day are compelling grounds for an injunction under Section 7402.  *See, e.g.*, *Hall*, 2013 U.S. Dist. LEXIS 183838 at *27 (noting the absence of evidence that defendant would cease prohibited conduct as a factor under Section 7402); *see also Abdo v. IRS*, 234 F. Supp. 2d 553, 566 (M.D.N.C. 2002) (holding that defendant's "adamant defense of frivolous positions in the face of overwhelming evidence" interfered with the proper administration of the Internal Revenue laws under 26 U.S.C. § 7407).  Absent a permanent injunction at summary judgment, Defendants would be unconstrained from continuing their illegal conduct, including between now and any decision by the Court at or following the July 2024 bench trial in this action.

## CONCLUSION

Given the material facts above and the law governing CRATs, the Court should grant the United States' Motion for Partial Summary Judgment and permanently enjoin Schreiner and Columbia, pursuant to 26 U.S.C. § 7402, through an order that:

1. Permanently bars Columbia and Schreiner from preparing tax returns for others that they know, or have reason to know, will result in the failure to report taxes owed from distributions from trusts governed by 26 U.S.C. § 664, including but not limited to capital gains taxes from CRAT distributions;

2.    For compensation or promise of compensation, permanently bars Columbia and Schreiner from providing tax advice concerning trusts governed by 26 U.S.C. § 664, including but not limited to CRATs, that claims that:

   a.  Their use allows taxpayers to avoid capital gains taxes (or otherwise provides for capital gains taxes to vanish, disappear, be forgiven, or escape taxation) from distributions to beneficiaries;

   b.  26 U.S.C. § 1015 does not apply to them;

   c.  They are charities, are charitable entities, or to otherwise suggest that they qualify as tax-exempt charities under federal tax law.

   d.  By establishing or through their use, a trust can acquire a stepped-up value basis for property (or treat the basis as equal to fair market value) when the prior owner transfers it to the trust, unless the property is/was transferred, acquired from, and/or passed to the trust by the decedent or decedent's estate as permitted under federal law;

   e.  By transferring property to them, the proceeds of the sale of the property by the trust are or become trust corpus;

   f.  When they purchase an annuity, distributions of gains or income by the trust to beneficiaries are recharacterized from ordinary income or capital gains to distributions of nontaxable trust corpus or return of principal;

   g.  A trust established pursuant to 26 U.S.C. § 664 can purchase an annuity and, by doing so, payments from that annuity to trust beneficiaries do not need to be reported as capital gains income on federal income tax returns;

h. 26 U.S.C. § 72 controls or otherwise supersedes the ordering rules of 26 U.S.C. § 664 for distributions from the trust; and

i. The exclusion ratio under 26 U.S.C. § 72 allows taxpayers to avoid capital gains taxes resulting from distributions from the trust.

3. Requires Schreiner, within fifteen (15) days of the Court's order, to include a copy of any such order enjoining him and/or Columbia on Columbia's website and any website controlled by Schreiner and used by him to sell or market accounting or tax preparation services to the public (placed prominently on the main webpage of those websites), as well as to remove all content advocating for the use of a trust governed by 26 U.S.C. § 664 to avoid or eliminate capital gains taxes from Columbia's website.[38]

4. Requires Schreiner, within thirty (30) days of the Court's order, to provide a copy of any order issued by the Court enjoining him and/or Columbia to any customer who hired him to prepare a tax return as part of the CRAT Strategy since 2016, or who he represented since 2016 before the IRS in a matter involving implementation of the CRAT Strategy.[39]

5. Bars Schreiner and Columbia from making any statements, written or verbal, or causing or encouraging others to make any statements, written or verbal, that misrepresent any of the terms of the Court's order against them in this action.

---

[38] *See, e.g.*, *Hansen*, 2006 U.S. Dist. LEXIS 54496 at *6 (requiring defendant to post a copy of that Court's injunction order on his website and removing false content from his website)

[39] *See, e.g., United States v. Stover*, 731 F. Supp. 2d 887, 914 (W.D. Mo. 2011) (including requirement that defendant provide a copy of the Court's injunction order to his clients), *aff'd* 605 F.3d 1099, 1114 (8th Cir. 2011).

Dated: January 8, 2024

Respectfully submitted,

TERESA A. MOORE
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Russell J. Edelstein*
RUSSELL J. EDELSTEIN
MA Bar No. 663227
NATHAN D. BANEY
VA Bar No. 75935
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7328 – Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-2704 (Edelstein)
Tel: (202) 307-6560 (Baney)
Fax: (202) 514-6770
russell.j.edelstein@usdoj.gov
nathan.baney@usdoj.gov
*Attorneys for Plaintiff United States*